ANDREW G. LINBLOM

*v.*

ROBERT RAMSEY.

1. HIGHWAY—*whether order for opening is final.* Where the county court, in a county not under township organization, after the report of the viewers had come in, passed an order approving of the report for laying out a road, except as to the land of a person named, which was not to be interfered with without damages were paid: *Held*, that the order was not a final one for the opening of the road, as the court had a right to abandon the proceedings if the damages when assessed were such as not to justify proceeding further, and the road being an entirety, no part could be opened without an order for opening the entire line.

2. Where an order approving the report of commissioners to view and locate a road recited that the road passed over and took the hedge fence of a party on its line, and stayed proceedings until his damages were assessed and paid, and, ten years after, the road supervisor opened the road near such party's land, and through the plaintiff's inclosed field, the court, in an action for damages, refused to allow the plaintiff to show that the other party's hedge was in the line of the road, and instructed the jury that it made no difference whether the hedge was included in the line of the road or not: *Held*, that the court erred in excluding the evidence, and in the instruction.

3. SAME —*justifying trespass in opening road.* Where a road supervisor is sued for throwing down plaintiff's fence and exposing his crops, he must show legal authority for doing the act, and it is error to instruct the jury that if they believe the defendant was acting within the scope of his duty as such officer when he opened the fence, to find for him, as it is calculated to mislead the jury.

4. SAME — *opening without notice.* Where the opening of a road was, in 1861, stayed by the county court until certain damages were assessed and paid, and no further action was taken until in June, 1871, when the road supervisor threw down plaintiff's fences and exposed his crops: *Held*, in an action of trespass against the supervisor, that an instruction that the defendant was not bound to give the plaintiff any notice of his intention to proceed and open the road, was erroneous.

5. BURDEN OF PROOF —*justification.* When the rights of private prop-erty are invaded by one whose acts would constitute a trespass, unless he

can show he was justified by legal authority to do the act he must be re-
garded as a trespasser. *Prima facie* he is liable, and the burden is upon
him to show, not design or intention to perform an official duty, but author-
ity of law for the act complained of.

6. EVIDENCE — *declarations of agent.* It is a general rule that where
the acts of the agent will bind the principal, there his representations,
declarations and admissions respecting the subject matter, will also bind
him, if made at the same time and constituting a part of the *res gestæ.*

7. But declarations of an agent made not in the presence of the principal,
and not while the agent is doing any act in respect to the subject matter of
the agency, will not bind the principal or his privies, and is not evidence
against either.

APPEAL from the Circuit Court of Henderson county; the
Hon. ARTHUR A. SMITH, Judge, presiding.

Mr. J. W. DAVIDSON, and Mr. JOHN J. GLENN, for the appel-
lant.

Mr. JAMES SIMPSON, for the appellee.

Mr. JUSTICE McALLISTER delivered the opinion of the Court:

Appellant sued appellee in trespass for unlawfully tearing
down a portion of fence enclosing land of which the former
was in possession as tenant of Mrs. Dewey, and letting in cattle,
whereby his crops were injured. The possession of plaintiff,
and the trespass by defendant, were conclusively proved, but
the jury found the defendant not guilty, and the court gave
judgment upon the verdict. Plaintiff appealed to this court.

The defendant sought to justify the trespass, on the ground
that he was supervisor of a road district in Henderson county,
and that the *locus in quo* was a part of his district and a por-
tion of an established highway. No question is made as to
his being such supervisor, and to prove the establishment of a
public highway through the lands in question, defendant gave
in evidence an order of the county court of that county made
in 1861, purporting to make an alteration in a certain county
road leading from Shaw's bridge on Honey Creek, to the town

of Warren, and described thus : " Commencing at the south-east corner of the north-east quarter of section 20, township 9 north, range 5 west, thence running 80 rods west, thence north 160 rods, thence on the most practicable route to the town of Warren." The order of the county court, after referring to the report of the viewers, adopts the plat and field notes of the surveyor accompanying it, " except the east line of William Ingerson's land, W. ½, S. E. 17, on which there is a hedge standing, which shall not be interfered with without damages are paid."

It appeared that the lands in plaintiff's possession were in the same section and adjoined those of Ingerson referred to in the order; that the hedge referred to was 160 rods long; that nothing had ever been done under the order until in the spring of 1871; that Ingerson claimed, but never had been paid any damages ; and, although the court admitted evidence on behalf of defendant, not of competent surveyors or of a satisfactory character, tending to show that Ingerson's hedge was outside the line of the proposed road as surveyed and designated by the viewers, yet when the plaintiff offered to prove by a competent surveyor, who had carefully surveyed the lines of the proposed road, that the hedge would fall within such lines, the court excluded the evidence and instructed the jury on behalf of defendant that in this case it made no difference whether the Ingerson hedge in question was within the line of the road in controversy or not.

The county of Henderson was not under township organization. The fifty-seventh section (Gross' Stat. 1869, p. 673) made it the duty of the viewers to ascertain when damages would be claimed, and report the names of the claimants to the court at the time of making the report.

The road viewers in this case reported the names of several, among whom was Ingerson. The merit of his claim was recognized, and the order was qualified as above stated. Under this phase of the case the order was not operative, or, in other words, was not a justification to the supervisor of roads to pro-

ceed and open the road until a compromise of the damages, or an assessment of them, had been made and reported to the county court, as provided in section 68 of the statute. Gross' Stat. 1869, pp. 675–6. That section, after providing for the mode of assessment, says: "Which award or assessment of damages, shall, as well where the amount shall be agreed upon by the parties, without applying to a justice of the peace, be laid before the county commissioners' court for consideration, who shall examine the matter, and should they decide the amount of damages is not unreasonable, or more than should be given, and that the opening and improving the road is called for by the public interest, *and the finances of the county will justify*, they, in that case, will approve and accept the award, and order the money to be paid; and the same being paid, the commissioner, superintendent or supervisor shall proceed to open and construct said road."

It is evident, from the provisions of that section, that the order of the county court, restraining the opening of the proposed road, if Ingerson's hedge was, in fact, within the line of it, as surveyed, unless he was paid his damages, was not a final order; because, when his damages came to be assessed and reported to the court, the latter might then decide that the amount, although but just to him, was so large that neither the supposed public good nor the finances of the county would justify its payment, and that, for such reasons, the matter should be dropped. This being the case, it would be absurd to say that the proposed road could be opened a few rods through plaintiff's land, although it might be stopped when it reached Ingerson's, adjoining it, for want of legal authority to open it there. The proposed road was an entirety from Shaw's Bridge to the town of Warren, and it was a mere act of wantonness to attempt to open it through plaintiff's possessions and crops in the latter part of spring and early summer of 1871, when nothing had been done for ten years, and when there was no legal authority to carry it farther. By the terms of the order and the consti-

tution of the State, as well as the statute, this proposed road could not be opened through Ingerson's land ; and as by the force of the order the road was an entirety, and by force of the statute the county court was at liberty, and was required to make a further order in the premises before the road could be opened, in case Ingerson's hedge fell within the line of it, as proposed and designated, the authority to open it through plaintiff's land was incomplete. In this view, the exclusion of the evidence offered to show that Ingerson's hedge would be included within the line of it, and giving the instruction that it made no difference whether it did or not, was error.

Error is assigned upon the admission in evidence, against the objection of plaintiff, the admissions, declarations and promise of one Perin, alleged to have been made to the county judge in March, 1870, respecting this road. They were introduced as binding upon Mrs. Dewey, under whom plaintiff held as tenant, on the ground that Perin was the agent of Mrs. Dewey in respect to the lands in question in plaintiff's occupation. They were made in the absence of Mrs. Dewey and plaintiff, and it is not pretended that Perin was at the time doing any act in respect to the subject matter of the agency. Besides, Perin's authority in the premises was conferred by power of attorney in writing, given in evidence, and there is no claim that he had any other authority. By the power of attorney he was made the mere special agent of Mrs. Dewey, to rent these lands and collect the rents. There is no authority, express or implied, thereby conferred upon him to do any act in regard to this road. It is a general rule, that where the acts of the agent will bind the principal, there his representations, declarations and admissions, respecting the subject matter, will also bind him, if made at the same time and constituting a part of the *res gestæ.* Story on Agency, §§ 134–137 ; 1 Greenlf. Ev., § 113.

This evidence, not falling within any legal rule as to admissions of agents against their principals, was mere hearsay, and therefore incompetent.

The court instructed for the defendant that, if the jury believed from the evidence that Ramsey, the defendant, was acting within *the scope of his duty* as supervisor of road district No. 27, in said county of Henderson, at the time of his opening said fences, for doing which he has been sued in this action, they are bound to find a verdict in his favor.

This instruction was wrong and calculated to mislead the jury. The ordinary import of the word " scope," as here used, is, design; aim, or purpose; intention. The question was not whether he acted with the aim, purpose, or intention of performing his duty, but whether he had such legal authority as would justify him in tearing away plaintiff's fences and exposing his crops to invasion by cattle. The possession of plaintiff, the trespass and injury to his crops, were clearly shown. Upon these, the elements of the cause of action, the evidence was undisputed. The law invests the rights of private property with some sanctity, and when they are invaded by one whose acts would constitute a trespass, unless such person can show that he was justified by legal authority to do the act, he must be regarded as a trespasser. *Prima facie* he is liable, and the burden is upon him to show, not design or intention to perform an official duty, but authority of law for the act complained of.

This order of the county court being made in the manner above stated, in 1861, the matter was permitted to remain dormant for the period of nearly ten years, when, as appears by uncontradicted evidence, on the 1st of May, 1871, this defendant proceeds to tear down plaintiff's fence, and it being restored, the same thing is done again on the 10th of June, same year; and notwithstanding the form of the order and this long lapse of time, the season of the year, and all the circumstances, the court instructed the jury, for the defendant, that he was not bound in law to give the plaintiff any notice of his intention to proceed and open the road. So that, upon the same principle, the defendant could have waited until plaintiff's

crops were just fit to be harvested, and then suddenly, without notice, have torn down the fence, and exposed such crops to destruction, with perfect impunity. If the matter had been carried to a finality in the county court, and immediate notice given to the supervisor, as required by the fifty-ninth section of the statute (Gross, p. 673), perhaps no notice would have been necessary. The proceedings themselves, if according to law, would have been notice. But as the matter was, in fact, as plaintiff offered to show, defendant was not authorized to proceed as he did, even if he had given sixty days' notice.

The judgment will be reversed and the cause remanded.

*Judgment reversed.*