William Summers et al. v. Hibbard, Spencer, Bartlett & Co.

1. CONTRACTS—*Subject to "Strikes and Accidents."*—Where a contract for the sale of iron was consummated by correspondence between the parties by letter, and upon the "letter head" of the vendor was printed the words "all sales subject to strikes and accidents," and who having failed to comply with the terms of his contract sought to avoid the same by reason of accidents, claiming that the words printed upon his letter head were a part of the contract, *it was held* that the words formed no part of the contract. The words " all sales subject to strikes and accidents " were a part of the printed letter head, while the words of acceptance were written for the occasion, and if the vendors had intended to make a conditional acceptance, they should have written words clearly indicating such intention.

2. CONTRACTS—*Rule of Construction.*—The rule of law that a man's own acts shall be taken most strongly against himself, obtains not only in grants, but extends in principle to all other engagements and undertakings.

3. CONTRACTS—*"Subject to Strikes and Accidents."*—*Application of*

*the Law.*—Where a contract for the sale of common sheet iron, not necessarily of the vendor's manufacture, was made subject to strikes and accidents, presumably occurring in their own mills, *it was held*, that as the contract could have been satisfied by a delivery of "common sheet iron," the product of mills neither owned nor controlled by them, the words "subject to strikes and accidents" formed no material part of the contract.

4. ADMISSIONS—*By an Agent After Doing Act.*—There is no implied authority of an agent after the doing of an act to make admissions for his principal concerning the same.

5. EVIDENCE—*Statements of an Agent.*—The statements of an agent are admissible generally, only when they are part of the *res gestae.*

**Memorandum.**—Assumpsit, in the Superior Court of Cook County; the Hon. THEODORE BRENTANO, Judge, presiding. Declaration in assumpsit, for breach of contract. Pleas, general issue and set-off; trial by jury; verdict and judgment for plaintiff; appeal by defendant. Heard in this court at the March term, 1893, and affirmed. Opinion filed July 12, 1893.

The statement of facts is contained in the opinion of the court.

APPELLANTS' BRIEF, LEROY D. THOMAN, ATTORNEY.

Appellants contended that the printed as well as the written parts of the letters must be considered to determine what the contract is. Jones on the Construction of Contracts, Secs. 215, 216, 217; Robinson Brothers v. Transportation Co., 45 Iowa, 470.

If, in the nature of the contract, there is an implied condition by which either party will be relieved from such unqualified obligation, and when in such case, without his fault, performance is rendered impossible, it may be excused. Dexter v. Norton, 47 N. Y. 62; Booth v. Spuytenduyvil R. Mill Co., 60 N. Y. 491.

APPELLEES' BRIEF, HAMLINE, SCOTT & LORD, ATTORNEYS.

Appellees contended that under the contract in question, breakages or accidents at the mill was no excuse for non-performance.

For rule of evidence as to letters: Brant v. Gallup, 111 Ill. 487; Flower v. Brumbach, 30 Ill. App. 297.

For rules as to printed forms: American Express Co. v. Pinckney, 29 Ill. 410; People v. Dulaney, 96 Ill. 503.

For rule as to bills of lading, warehouse receipts, etc.: M. D. Transp. Co. v. Thielbar, 86 Ill. 73; Western Transit Co. v. Hosking, 19 Brad. 610.

The performance of the contract was not rendered impossible by any act of God or the public enemy, and save in such cases there are no implied conditions in any contract which excuse its non-performance. Bunn et al. v. Prather et al., 21 Ill. 218; Dehler v. Held et al., 50 Ill. 491; Steele et al. v. Buck, 61 Ill. 343.

Appellees were entitled to the damages allowed, and could have claimed, and in such cases would have been allowed, much more. 1 Sedgwick on Damages (7th Ed.), 557 and cases cited; Follansbee v. Adams, 86 Ill. 15.

Opinion of the Court, Waterman, J.

On March 1, 1889, the appellee wrote to the appellants as follows:

"Wm. G. Hubbard,      A. C. Bartlett,      C. H. Conover,      E. G. Clark,
Pres. and Treas.          Vice-Pres.              Sec'y.                    Cashier.

Hibbard, Spencer, Bartlett & Co.,
Lake and Wabash.

DIRECTORS :
Wm. G. Hibbard,      A. C. Bartlett,      James W. Nye,      C. H. Conover,
E. G. Clark.

Summers Bros. & Co., Struthers, Ohio.

Gentlemen :   We are thinking of buying 5,000 to 10,000 bundles common sheet iron for delivery in equal quantities in the months of April, May, June, July and August, and would be pleased to have your best price on same.   We shall want all numbers from 16 to 27, but at least three-fourths of the lot 26 and 27.   Hoping to hear from you soon with a low price.

Yours truly,

Hibbard, Spencer, Bartlett & Co."

A few days thereafter appellee received the following letter from appellants:

"All sales subject to strikes and accidents.

SUMMERS BROS. & CO.,

Manufacturers of Box-Annealed, Common and Refined Sheet Iron.

STRUTHERS, Ohio, Mch. 4, 1889.

To Hibbard, Spencer, B. & Co., Chicago.

Your favor of Mch. 1st at hand.

We make you the following offer:

```
1,000 bdls. in March,
1,000   "    "  April,
1,000   "    "  May,
1,000   "    "  June,
  500   "    "  July,
  500   "    "  August,
─────
5,000.
```

March and April iron as follows:

```
No. 27 x 24 x 101 at $2.80 deld. Chicago.
    26 x 24 x 101  "  $2.70  "      "
    16 x 18 x  20  "  $2.60  "      "
```

May, June, July and August iron:

```
No. 27 x 24 x 101 at $2.85 deld. Chicago.
    26 x 24 x 101  "  $2.75  "      "
    16 x 18 x  20  "  $2.65  "      "
```

All 60 days or 2 per cent ten days from date of invoice.

Yours resp'y,

SUMMERS BROS. & CO."

To this appellee replied, using the same letter head as before:

CHICAGO, March 9, 1889.

Summers Bros. & Co., Struthers, Ohio.

GENTLEMEN: Your favor 4th is at hand. If you are willing to revise your ideas a little we can trade with you. You may enter our order for 5,000 bdls. first-class common sheet iron, as follows:

```
  500 bdls. March delivery.
  500   "    April  delivery.
1,000   "    May delivery.
1,000   "    June delivery.
1,000   "    July delivery.
1,000   "    August delivery.'
```

Prices to be:   No. 22 and 24, $2.60.

24 and 26, $2.70.

27, $2.80.

Chicago delivery, 60 days, or two per cent cash in ten days.

If you accept our offer you may enter us for March shipment 250 bdls. 26 x 24 x 101 in., and 250 bdls. 27 x 24 x 101 in.

Awaiting your prompt reply, we are,

Very truly yours,

HIBBARD, SPENCER, BARTLETT & CO."

March 11th, appellants made the following reply:

" All sales subject to strikes and accidents.

SUMMERS BROS. & CO.,

Manufacturers of Box-Annealed, Common and Refined Sheet Iron.

STRUTHERS, Ohio, March 11, 1889.

To Hibbard, Spencer, B. & Co., Chicago.

Your favor of March 9 at hand.

MR. CHARLES:   Dear Sir:   We accept your offer, 5,000 bdls. iron, 500 March, 500 April, 1,000 May, 1,000 June, 1,000 July, 1,000 August.

Prices, No. 27 at $2.80

26 "   $2.70

24 "   $2.60

F. O. B. cars, Chicago, 2 per cent ten days from date of invoice.   We also enter your order, 250 bdls. 26 x 101, and 250 bdls. 27 x 101, Mch. shipment.

Respectfully yours,

SUMMERS BROS. & CO."

On March 26th, appellee wrote to appellants as follows, using their customary letter-head:

"March 26, 1889.

Summers Bros. & Co., Struthers, Ohio.

DEAR SIRS:   We notice that some of the iron we are receiving from you is not branded with your name.   Hereafter please see that each bundle is branded.   It would suit

us very much better if, in banding the iron, you would put
the two end bands from twelve to fifteen inches from the
end of the sheets, instead of about six inches, as you now
place them. We find that when the bands are put on as
suggested above, the iron can be piled in very much better
shape. We are thinking some of placing another order for
common iron for shipment in July and August, and would
be pleased to have you give us your best figures.

Yours very truly,

HIBBARD, SPENCER, BARTLETT & Co."

On March 28th appellant replied with the following let-
ter, on a plain piece of paper with no letter-head:

STRUTHERS, Ohio, Mar. 28, 1889.

Hibbard, Spencer, B. & Co., Chicago, Ill.

GENTLEMEN: Your favor of 26th received. We will
band the iron as you suggest, and have notified shipper that
every bundle must have our brand on. We will furnish
you 3,000 to 5,000 bundles, June, July, August and Septem-
ber delivery.

27 x 24 x 101 at $2.85.

26 x 24 x 101  "   2.75.

24 x 24 x 101  "   2.65.

Terms: Freight, cash; balance two per cent., ten days.
Kindly give us a prompt acceptance.

Yours respectfully,

SUMMERS BROS. & Co.

Excuse the letter-head."

To this offer appellees on April 3rd, replied:

"April 3rd, 1889.

Your favor of the 28th ult. is at hand. We would not care
to enter an order at the advance which you ask. If you care
to make an addition to our former order for July, August and
September delivery, we will decide whether we want 3,000
or 5,000 bundles, and send you contract to that effect. We
would not, however, as we said before, care to enter at the
price you now name."

Appellants on April 5th replied, using the same letter-
head as in the letter of March 11th:

" April 5, 1889.

Your favor of April 3d at hand. We will enter your order 3,000 or 5,000 bundles July, August and September delivery, at same figures as former order. We owe yo<sup>r</sup> 310 bundles April. Will you want all No. 26 and 27?

Summers Bros. & Co."

Appellee subsequently consented to receive 3,000 bundles under this second contract, but appellants never delivered any under it, and delivered but 1,847 bundles under the first contract. As an excuse for not doing so, they claimed to appellee on July 24th, that the contracts were made subject to strikes and accidents, and that they were prevented from filling the contracts in time, by reason of breakages in their mills.

A Mr. Charles acted as the agent of appellees in making the contract of sale. Upon the trial, one of the appellants was permitted to testify what Mr. Charles told him some months after the contract was made, he, Charles, at the making of the contract, knew and understood as to the printed statement on appellant's letter-heads—" all sales subject to strikes and accidents"—forming a part of the contract.

Charles denied having made the statements attributed to him.

Appellees, in August, 1889, bought of other parties the iron contracted for, which appellants failed to supply, and proved by uncontroverted evidence that the purchase price at the time of such purchase remained the same from then through the month of September and into October.

Appellees sued for the difference, that is, for the amount paid by them in excess of the contract price. If appellees were entitled to this, it was undisputed that there was due them the sum of $1,546.61, and for this amount the court instructed the jury to find for the plaintiff.

Counsel for appellants state the controversy to be:

First. The appellee contends that it is entitled to the payment made to it for iron in excess of the contract price, and that it is not bound by any printed condition contained

in the letters on which the contract is based. The appellants insist that when the offer of sale was made on March 4th, it was on the express condition, subject to " strikes and accidents," and that the failure on their part to deliver was by reason of accidents in their mill plant. And therefore they should not be charged as claimed by the appellee.

Second. That appellee seeks to recover an amount based upon the excess paid by it for iron bought in the month of August, 1889, without offering to prove what the market price of iron was, at the date when each installment was to be delivered.

While we do not think this a completely accurate statement, yet it sufficiently indicates the nature of the controversy.

We do not regard the line " All sales subject to strikes and accidents" at the top of certain letters written by appellants as any part of the contract of sale by them made. The first contract was made by the letter of March 9, 1889, written by appellee to appellants, in which was a definite proposition for the unconditional purchase of a certain quantity of iron, and by the reply of appellants to this. This reply, dated March 11th, accepted the offer of appellee.

It is contended that this letter written by appellants, beginning with " We accept your offer," following which is a repetition of the terms of the offer made by appellee, was a merely conditional acceptance and made a merely conditional sale, because there was printed thereon, not in the body of the letter or in the words stating the acceptance or promise, but above the address, the sentence, "All sales subject to strikes and accidents." It is to be borne in mind that this sentence is a part of a printed letter-head, while the words of acceptance were written for the time and occasion; that the letter of acceptance was entirely the production of appellants and such as they saw fit to give; that if they intended to make only a conditional acceptance, it was easy for them to have written, not, " we accept your offer," but words that would have clearly indicated a conditional

acceptance only, and thus have left the negotiations at that point incomplete and fruitless.

The rule of law that a man's own acts shall be taken most strongly against himself, obtains not only in grants, but extends in principle to all other engagements and undertakings. Gibson et al. v. Minet et al., 1 H. Blackstone 569–586; Broom's Legal Maxims, 596.

The conduct of appellants subsequent to the writing of this letter indicates that they did not regard their acceptance as conditional. The offer of appellees was absolute; a conditional acceptance would have made no contract, but appellants, without asking an assent to any conditions they now insist existed, proceeded to forward iron to appellee.

If the words "All sales subject to strikes and accidents" were to be considered a part of the contract, the question of their effect would arise.

The sale was of iron, a quantity of "common sheet iron," not necessarily of appellants' manufacture. Were, then, the strikes and accidents alluded to, those only occurring in appellants' mills? And if so, what would be their effect upon the contract? That is, would such strikes and accidents put an end to the contract and absolve the vendors from any further liability, or would they merely suspend the operation of the agreement and extend the time of delivery to a period when the strike was over or the damage resulting from the accident had been repaired?

The undertaking of appellants would have been satisfied by a delivery of merchantable, common sheet iron, the product of mills neither owned nor controlled by them; that the printed head-line, "All sales subject to strikes and accidents" entered into and formed a part of such a contract, we see no reason for thinking.

Having a right to supply merchantable bar iron made in any mill, the accident at appellants' in no wise rendered the performance of the contract impossible.

The testimony of one of appellants as to what Mr. Charles, the agent of appellee, said to him some months after the contract was made, ought not to have been admitted.

There is no implied authority of an agent to, after the doing of an act, make admissions for his principal concerning the same.

The statements of an agent are admissible, generally, only when they are part of the *res gestæ*. Story on Agency, Sec. 134, 137; 1 Greenleaf on Ev., Sec. 133; Whiteside v. Margarel, 57 Ill. 507; Lindblom v. Ramsey, 75 Ill. 246; Bensley v. Brockway, 27 Ill. App. 410; McCarthy v. Muir, March term, 1893, Ill. App.

It is true that appellee could not, for appellants' account, buy in August, iron not due until September and October, nor can the August price determine the value of iron deliverable in subsequent months; but it is undisputed that appellants failed to deliver or offer the iron due in either August, September or October, and it was uncontroverted that the price paid in August was the price from thence up to a period in October, beyond the date at which the last installment should have been furnished.

Appellants have therefore had all the advantage of an opportunity to deliver in September and October and been charged only with the price ruling at the respective dates when the iron promised was due.

The judgment of the Superior Court is affirmed.