THE HARTFORD LIFE INSURANCE COMPANY

*v.*

NICHOLAS J. SHERMAN *et al.*

*Opinion filed October 23, 1906.*

1. INSTRUCTIONS—*instruction need not include theory of opposite party as to the facts.* It is not necessary that the instructions on one side include the theory of the opposite party as to the facts.

2. PRINCIPAL AND AGENT—*when representations of an agent are binding on principal.* Where the agent of an insurance company is entrusted with checks and receipts for the purpose of settling a death claim, the agent's representations, declarations and admissions in closing up the transaction, if made at the same time and constituting a part of the *res gestæ,* are binding upon the company.

3. APPEALS AND ERRORS—*question not raised in trial court can not be raised on appeal.* A question involving the rights of the parties which is not raised in any manner in the trial court cannot be raised on appeal.

APPEAL from the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Kendall county; the Hon. CHARLES A. BISHOP, Judge, presiding.

JOHN FITZGERALD, and KRAUS, ALSCHULER & HOLDEN, for appellant.

DARNELL & LAWBAUGH, and GEORGE M. POPHAM, for appellees.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

Appellant, the Hartford Life Insurance Company, being indebted to appellees, Nicholas J. Sherman and Mary A. Sherman, his wife, in the sum of $4000 upon a policy of insurance upon the life of their deceased son, Ray Sherman, sent by mail to its agent, Peter Becker, at Somonauk, who solicited and obtained the insurance, two checks for $2000 each, payable, one of them, to the order of Mary A. Sherman and the other to the order of Nicholas J. Sherman, and two receipts for $2000 each, to be signed by them, respectively. By the letter the agent was advised that the receipts must be signed and the policy surrendered before the delivery of the checks, and that claims were paid through agents as a favor to them to aid them in soliciting new business, and therefore they were not allowed to make any charge for expenses against the claimant or the company. On October 14, 1901, Becker went in the morning to a bank at Somonauk and exhibited the two unendorsed checks and said that he was going out to fix up the matter with the Shermans. He said he would take the checks out and get them endorsed and return them to the bank, and thereupon the bank gave him two drafts for $1000 each on the First National Bank of Chicago and $1859 in cash. He went to the farm of the Shermans, about fourteen miles from Somonauk, and told them that he had come to settle up the insurance matter for the company. As a result of his negotiations with them he gave to each of them one of the drafts of the Somonauk bank for $1000, one-half of the amount due them. He had secured from them insurance on another son, Earle Sherman, for $5000, and the first premium amounted to $141. This premium was credited on the amount due from the insurance company, and Becker gave to Nicholas J. Sherman a note, signed by himself, for $1859, payable to the order of said Nicholas J. Sherman

four and one-half months after date, with interest at five and one-half per cent. He then returned to the bank and deposited to his own credit the two checks for $2000 each sent to him to settle the claim, and each bore the apparent endorsement of the payee. The next day he mailed to the insurance company a letter enclosing the policy for $4000 and the two receipts sent him by the company for $2000 each, one of which purported to have been signed by Mary Sherman and the other by Nicholas J. Sherman. The insurance company paid the checks sent by it to Becker, and the drafts of the Somonauk bank were paid. The note for $1859 signed by Becker was not paid, and this suit was brought in the circuit court of Kendall county by appellees, against appellant, to recover the balance alleged to be unpaid on the policy. There was a verdict for appellees, followed by a judgment, which was affirmed, on appeal, by the Appellate Court for the Second District.

The plaintiffs, in their testimony at the trial, denied that they, or either of them, endorsed the checks for $2000 each or signed the receipts running to the defendant. Their testimony was to the effect that Becker told them the defendant could not pay the whole policy at that time; that it could only pay $2000 and had only sent that amount to him; that it had had heavy losses, was pressed for money and wanted a little time; that he thereupon produced the two drafts of the Somonauk bank for $1000 each and a receipt for $4000; that Nicholas J. Sherman asked how it was that the receipt was drawn for $4000 when only $2000 was paid; that Becker quieted his apprehensions by telling him that the policy must be surrendered and the receipt given before he could do anything about a settlement, and that it would be all right and he would see that the company paid the balance; that Nicholas J. Sherman asked Becker what he would have to show that the company owed him, and Becker said that he would give his note; that Becker told both the Shermans that the note would be all right and

would be just as much the note of the Hartford Life Insurance Company as though the officers themselves signed it; that Nicholas J. Sherman then signed the receipt for $4000, and Becker, having secured the receipt and .the policy, was about leaving when Sherman said that he must have something to show that the company owed him; that Becker then figured the balance after deducting the first premium of $141 on the other policy; that Sherman then produced a blank note and filled it up for that sum and Becker signed it, and that Becker said if they wanted the money before it was due, to write and let him know and he would see that the Hartford Life Insurance Company paid it. There was no contradictory evidence as to the representations of Becker or what occurred at the farm, but there were letters from Nicholas J. Sherman to Becker, at Makanda, Illinois, tending to prove that the plaintiffs looked to him personally for payment of the note. The other evidence for the defendant consisted of the opinions of witnesses that the alleged signatures of the Shermans, which they had denied, were genuine, and the testimony of one of the witnesses to handwriting that Mr. Sherman admitted the signature to the $2000 receipt, purporting to be signed by him, to be genuine. Sherman and his attorney both denied that such an admission was made.

Counsel for both parties have argued at great length the controverted questions of fact, one side contending that the verdict was against the clear preponderance of the evidence and the other insisting that it was fully justified by the evidence, and but a small part of either argument pertains to any matter cognizable in this court. The question whether the finding of the jury was against the weight of the evidence has been finally settled by the judgment of the Appellate Court.

The court gave at the request of the plaintiffs three instructions. The third, which related to the measure of damages, is not objected to, but it is contended that the first and

second were wrong.  The first stated at considerable length the things which it was necessary for the plaintiffs to prove in order to recover, and one of the things to be proved was that the defendant had not paid to the plaintiffs more than $2141. , It is argued that this clause was misleading because the payment was made in two checks of $2000 each and not in money, and was made through Becker and not directly to the plaintiffs.  We do not see how the jury could have supposed from this instruction that if payment was made in the checks and through Becker it was not a payment.

It is further contended that the instruction was erroneous in requiring the jury to believe, in order to defeat a recovery, that the plaintiffs knowingly and understandingly executed and delivered a release and satisfaction of their claim without fraud of the defendant or its agent.  It is said that even if the Shermans never knowingly signed the receipts or delivered them, yet if they made an arrangement with Becker whereby they took his personal note there would be no right of recovery.  It may be that there would .have been some basis for this criticism if no other instructions had been given, but the tenth instruction given at the request of the defendant informed the jury as to the law if the jury believed, from the evidence, that the plaintiffs used part of the proceeds of the insurance policy by loaning the same to Becker.  It is not necessary that the instructions on one side shall include the theory of the opposite party as to the facts, and it was therefore unnecessary that the instructions asked by the plaintiffs should include the theory that Becker borrowed the money of them or was to account personally to them for the balance unpaid.

Another objection to the instruction is that it assumed that Becker was defendant's agent.  There was no such assumption in the instruction.  But if it should be conceded that there was, it would not be erroneous on that account, since the fact that Becker was defendant's agent in obtaining whatever receipt was obtained was proved and not dis-

puted. The receipts which defendant insisted were signed were sent to Becker for the purpose of obtaining the signatures and the checks with which to make payment were entrusted to him, and the rule is, that where the acts of an agent will bind his principal, his representations, declarations and admissions respecting the subject matter will also bind the principal if made at the same time and constituting a part of the *res gestæ.* (Story on Agency, sec. 134; *Linblom* v. *Ramsey,* 75 Ill. 246; 1 Am. & Eng. Ency. of Law, —2d ed.—1141.) If any false representations were made by Becker in executing the authority conferred upon him, such representations were binding on the defendant. The fact that Becker was the agent of defendant in making payments was not disputed, but the claim of the defendant was that his false representations and fraudulent acts were unauthorized because not within the scope of his agency.

Counsel also say that the instruction omits from the hypothesis of fact the endorsement by appellees of the two drafts for $2000 each, and shifts the burden of proof as to them. It was not a part of plaintiffs' theory of the case that they made the endorsements which they denied, and the instruction did not attempt to advise the jury as to the burden of proof. The third instruction asked by the defendant and given, informed the jury that fraud is never presumed, and that fraud of an agent is never imputed to the principal unless committed under the direction of the principal or within the scope of the agent's authority. Thirteen instructions were given at the instance of the defendant, which fully covered every defense claimed by it. The jury were advised that if Becker made fraudulent and untruthful statements and representations, defendant was not responsible for them nor bound thereby unless made within the scope of his agency; that he could bind the principal only when acting within the scope of his authority; that a person dealing with an agent does so at the risk of being required to show that the agent has the authority to do the particular

thing which he assumes to do as agent; that if Becker was not authorized to make the false and fraudulent representations alleged and his conduct was not such as to justify plaintiffs in believing that he had authority to make them, the defendant was not bound, and that if Nicholas J. Sherman executed the receipt in full and knew that it was a receipt and release, the jury had no right to find a verdict in favor of plaintiffs, or either of them, and in such a case the verdict should be in favor of defendant.

The second instruction given at the request of the plaintiffs related to the legal effect of taking the note of a third party by a creditor, and it is conceded that in ordinary cases the instruction would be correct. The instruction was not, perhaps, strictly applicable to the case made by the plaintiffs, since they both testified that the note was given and taken as the note of the company under the assurance that it bound the defendant to the same extent as if executed by one of its officers. We do not think, however, that the instructions, viewed as a whole, were unfavorable to the defendant or that they afford any ground for reversing the judgment.

The last point stated in the brief of the counsel for appellant is, that if the plaintiffs, or one of them, executed and delivered a release of the cause of action it could not be set aside in a court of law and that chancery alone would have jurisdiction to set it aside. That question was not raised in any manner in the trial court. If the doctrine invoked has any application to a receipt which is admitted to be genuine, it could not be availed of here for the first time, and in this case plaintiffs claimed that the receipts were not signed by them or either of them.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*

FARMER and VICKERS, JJ., took no part in the decision of this case.