## LARUE ET AL. *v.* AMERICAN DIESEL ENGINE COMPANY.

### [No. 21,896. Filed December 12, 1911.]

1. PLEADING. — *Trial.* — *Procedure.* — *Simplification.* — *Code.* — The purpose of our code was to simplify the procedure; and to that end the distinction between the pleading and practice in law and in equity was abolished. p. 613.

2. MORTGAGES. — *Foreclosure.* — *Receivers.* — *Sales.* — *Subsequent Chattel Mortgages.*—*Intervening Petitions.*—*Parties.*—In a suit for the foreclosure of a mortgage on real estate, including "all machinery * * * that may hereafter be placed upon said premises," a receiver having been appointed and a sale having been made under foreclosure and a deed having been made in pursuance thereof to the mortgagees, a subsequent vendor of certain machinery located on such land may, by an intervening petition, litigate its right to remove such machinery, since the law favors the litigation of all claims in one proceeding where the rights of the parties can be conserved. pp. 613, 614.

3. PLEADING.—*Law.*—*Equity.*—The abolition of the distinctions between the pleading and practice in proceedings at law and in equity did not affect the substantive rights of parties, but merely permitted causes and defenses of whatever nature to be litigated in one case. p. 613.

4. MORTGAGES.—*Real.*—*Priority.*—*Fraud.*—A real estate mortgage on a tract of land including "all machinery, apparatus and appliances of whatever description that may hereafter be placed upon said premises" is superior to a subsequent contract of conditional sale on a stationary engine, placed on such premises as a part of a power plant thereon, an agent of the vendor having falsely

assured such real estate mortgagee at the execution of such real estate mortgage that such engine had been paid for. pp. 615, 619.

5. MORTGAGES.—*Real.*—*Sales.*—*Removal of Chattels.*—*Indemnity Bonds.*—*Finding.*—In a suit by a vendor of chattels against the mortgagee of real estate, a finding for the plaintiff, but requiring it to give an indemnity bond to cover the cost of damage done by the removal thereof, indicates that damage will accrue to the real estate by the renewal of such chattels. pp. 617, 620.

6. MORTGAGES.—*Intervening Petition Asserting Legal Rights.*—*Equitable Recovery.*—A vendor of chattels who asserts a legal right thereto, under a contract wherein it retains title until the goods are paid for, and which goods are apparently covered by a mortgage on the real estate, must recover on the strength of such legal claim and not by virtue of an equitable claim. pp. 618, 620.

7. EQUITY.—*Innocent Persons.*—*Loss by.*—Where one of two equally innocent persons must suffer a loss, he who puts it in the power of one, or confers the apparent authority upon one, to injure another, must bear the loss. p. 619.

8. PRINCIPAL AND AGENT.—*Secret Instructions.*—A principal is bound by the acts and declarations of his agent within the scope of his general employment, regardless of secret instructions to the contrary. p. 620.

9. ESTOPPEL.—*Agents' Declarations.*—A principal is estopped by the acts and declarations of his agent within the general scope of his employment. p. 620.

10. MORTGAGES.—*Priority.*—*Notice.*—A mortgage of real estate duly recorded for three months prior to the execution of a contract of conditional sale of goods apparently covered by the mortgage, constitutes constructive notice of the rights of such mortgagee. p. 621.

From Howard Circuit Court; *J. F. Elliott,* Judge.

Intervening petition by the American Diesel Engine Company against Gilbert Larue and others. From a decree for plaintiff, defendants appeal. *Reversed.*

*Wherry & Morgan, Bagot & Bagot* and *Blacklidge, Wolf & Barnes,* for appellants.

*Orlo L. Cline, James F. Morrison* and *Joseph C. Herron,* for appellee.

MYERS, J.—Appellants, as copartners, were the owners of certain real estate in the town of Fairmount, Grant county, Indiana, upon which they had constructed and were oper-

ating an electric lighting plant. They sold the property to one Ingler on payments, and took from him a mortgage to secure the unpaid purchase money. Default was made in payment, a suit was brought to foreclose the mortgage, which proceedings ripened into a deed, upon a purchase by appellants at sheriff's sale. Upon filing the complaint for foreclosure a receiver was appointed, and continued in possession under the order of the court, pending the year for redemption. The decree of foreclosure was entered June 8, 1905, and sale was made thereunder August 2, 1905. Appellee, on March 26, 1906, by leave of court, filed its petition under the original cause, to which it had not been made a party, for leave to file an intervening petition, which was granted, and notice was ordered to be given to appellants returnable April 9, 1906. This was a petition claiming that appellee was the owner of certain property put upon the land by Ingler after his purchase, to wit, an oil engine and appurtenances, under a written contract that title should remain in appellee until full payment should be made. Appellants appeared and demurred to it, on the grounds of want of jurisdiction of the court over the persons of appellants, want of juridiction of the subject-matter, and insufficiency of facts to constitute a cause of action. The overruling of these demurrers presents the first alleged error assigned, the contention of appellants being that, as it was a mere question of title, appellee was relegated to its action at law, and that its petition for intervention had no place in the proceedings in foreclosure.

The petition sets out the following facts: On October 1, 1904, appellants, who were the owners of certain real estate upon which was located machinery for the generation of electricity, conveyed it to one Ingler, and took back from him a purchase-money mortgage to secure $20,000 in payments, which mortgage by its terms included

"also all machinery, apparatus and appliances of whatsoever description that may hereafter be placed upon

said premises or installed as part of said lighting and power plant, or used as an adjunct thereto, until the mortgage has been fully paid and satisfied.''

It also included all wires, poles and other appliances which were a part of the plant, and located on the property of other persons. On September 29, 1904, a proposal was made to Ingler to sell to him on payments, under a written contract to be subsequently accepted by an executive officer of appellee before it became binding on it, an oil engine with its appurtenances, and to install such engine for a stated price. The contract provides that

"it is mutually agreed and understood that the title to the engine and equipment described in the above specifications shall remain in said company [appellee] until all said payments shall have been made in full. The purchaser agrees to do all acts necessary to perfect and maintain title in said company.''

Then follow provisions for retaking the property on default in payment. The engine was shipped, and was set up on the real estate by appellee, and was ready for use March 28, 1905, in accordance with the contract, but was never used. The petition then alleges that on April 3, 1905, appellants instituted a suit to foreclose their mortgage against Ingler; that a receiver was appointed; that such receiver took possession of, and operated, the plant; that a decree was entered and the property sold to appellants; that appellee was not a party to the suit; that the receiver had possession, and that appellee had demanded possession, and that neither the receiver nor appellants would permit the property to be removed, which appellee claimed the right to remove by reason of default in payments, and that appellants denied right of possession in appellee, its ownership, and that the property could be removed without damage or injury to the real estate. The petition prayed for an order authorizing the removal of such property.

Appellants' position is that appellee was nowise interested in the issue presented by the foreclosure; that its claim

of title was wholly independent of, and could not be liti-
gated in, that suit, but must be the subject of an independ-
ent suit, and that as a cross-complaint the petition is insuf-
ficient.   In some sense appellants' position may be true;
that is, appellee was not interested in the issue of the fore-
closure of the mortgage, and the question could have been
litigated in an independent suit; but appellee was interested
in the subject-matter of that suit, for appellants were claim-
ing that the property in question was covered by their mort-
gage.   The policy of our code was to simplify the pro-
1.   cedure, and end litigation with the minimum of time
and expense, so long as this may be consistently done
under the settled principles of law.   To that end, the dis-
tinction between the pleading and practice in law and in
equity is abolished.   §249 Burns 1908, §249 R. S. 1881.

We have no specific statute for intervention, except such
as may be inferred from, or may arise under §273 Burns
1908, §272 R. S. 1881, where the court is required
2.   to cause other persons not parties to the record
to be made parties where a complete determination
of the controversy cannot be had without their presence,
and we take it that even that statute would not authorize
the litigation of a wholly collateral issue.   Had appellee
been made a party to the original suit for foreclosure,
it cannot be doubted that it would have been a proper
party, and that the question could have been properly
litigated there.   The rule laid down in Jones, Mortgages
§1445, and quoted in the case of *Pancoast* v. *Travelers Ins.
Co.* (1881), 79 Ind. 172, 176, is one applicable to strictly
chancery procedure, which is abrogated by statute; and
it was invoked in that case for the purpose of affirming
the judgment, because it was otherwise right, and no
harm had been done to the petitioners.   In the
3.   distinction between the pleading and practice in law
and in equity, the statute has not changed the rules
of law as to the rights of parties (*Matlock* v. *Todd* [1865],

25 Ind. 128), nor abridged the inherent powers of courts, nor affected the rights of parties in the remedies formerly given, except to change, in some respect, the forms of the remedies. *Emerick* v. *Miller* (1902), 159 Ind. 317. Legal and equitable remedies may be joined in the same action, and legal and equitable defenses interposed. *Field* v. *Brown* (1896), 146 Ind. 293.

In this case, appellee was directly interested in part of the subject-matter of the suit. · The property was in the possession of an officer of the court. Under the law, that possession could not be interfered with without the court's permission. That permission it could withhold or grant in its discretion. The property was claimed under the mortgage, decree and sale, and its possession was claimed by the court as a part of the security; and while appellee, by the permission of the court, might have brought an independent suit, it was not bound to do so. The situation might have been further complicated. As was said in the case of *Cambria Iron Co.* v. *Union Trust Co.* (1900), 154 Ind. 291, 296, 48 L. R. A. 41: ''It is the spirit of our code to settle in a single action the rights and equities of all persons interested in the subject-matter, and to simplify the rules of practice and pleading, as far as the same may be done with due regard to the just determination of the controversy. To accomplish this end, therefore, one not a party, and having an interest in the subject-matter of a pending action that may be adversely affected by the suit, will be permitted by the court upon a proper showing, under §273 Burns 1894 [§273 Burns 1908, §272 R. S. 1881], to come into the case for the protection of whatever right or interest he may have in the subject-matter.'' The distinction between that case and this one is, that the suit here was not pending, but the subject-matter was in the custody of the law, and it was a matter within the discretion of the court whether it would let appellee in to proffer a claim of title to the property, and we cannot say that it was abused.

If the application had been denied, we probably would not have interfered with such order. As it stands, appellee came into the court making claim to certain property in the possession of the receiver, and, setting out its claim of title, asked for possession and removal. We think there can be no reversible error in the court's action in that respect. The policy of such action has received approval in many jurisdictions. 17 Am. and Eng. Ency. Law (2d ed.) 180 et seq.; 16 Cyc. 201, 202.

The real controversy is as to the law applicable to the facts in the case. The deed from appellants to Ingler was dated and acknowledged September 27, 1904, and was placed the same day in escrow, and was recorded October 19, 1904. The mortgage from Ingler to appellants was dated and signed October 1, acknowledged October 14, and recorded October 21. The purchase price of the property was $24,000, of which sum $4,000 was paid concurrently with the delivery of the deed. The date of the proposal to Ingler to install the engine was September 29, 1904, and its approval by the executive officer of appellee was October 6, 1904. The proposal was signed by appellee "by S. Jerome Johnson, Resident Sales Agent, Indianapolis, Indiana," followed by a formal acceptance in writing by Ingler, and this, in turn, by an acceptance in writing by appellee's executive officer. Ingler had no property or means. Johnson, when he first appeared, represented himself to appellants as the agent of appellee, and proposed purchasing their property for the purpose of installing one of appellee's engines, as a sample from which to sell oil engines, and his proposition was to pay cash. A few days later he came back with a man whom he introduced as Ingler. When it came to closing the option, he represented that he had purchased and paid for an engine to be installed in the plant, and that his money was reduced. He represented to them that they were safe, as the mortgage would cover the engine and its appurtenances, and they agreed to accept

the balance of the purchase price in payments, and, at John-
son's special instance, the following clause was inserted in
the mortgage, after including the real estate, chattels and
chattels real, and all machinery connected with the plant:

> "Also all machinery, apparatus and appliances of
> whatever description that may hereafter be placed upon
> said premises, or installed as a part of said lighting and
> power plant, or used as an adjunct thereto, until this
> mortgage has been fully paid and satisfied."

He directed that a deed be made to Ingler, giving as a rea-
son that he had not yet perfected the intended incorporation.
No corporation was ever formed. Johnson took charge of
the plant upon the delivery of the deed, which was about
the middle of October. The work of installing the engine
began about the last of January, 1905. An old building was
removed from the site, and another building of concrete
blocks erected, and in this the engine was installed by ex-
cavating an area six and a half feet wide, twenty-four feet
long and nine and a half feet vertical, and filling the whole
solidly with concrete, in which anchor bolts with heads were
vertically imbedded to a depth of six feet, which held the
engine in place. It appears from the evidence that one Mc-
Carty was a general sales agent of appellee, at Indianapolis.
Whether he had authority to employ Johnson does not ap-
pear, except inferentially, but Johnson represented himself
to appellants to be a sales agent of appellee, and, it is
claimed by appellants, in the presence of McCarty, who said
nothing. It is also claimed by appellants that Johnson rep-
resented to appellants, in McCarty's presence, that he had
purchased the engine and had paid for it, and that Mc-
Carty stated that appellee sold engines for cash only. Ap-
pellee did in some sense acknowledge Johnson as its agent,
for it approved the proposition of sale to Ingler, which was
signed by Johnson as appellees "resident sales agent."
That McCarty held out to appellants, or at least permitted
Johnson to hold out to them, that he was an agent of ap-

pellee, is abundantly established by the evidence. There was some direct correspondence between Johnson and appellee during October, 1904, in regard to sales of engines. Appellants had no knowledge of the title contract, but relied upon the representations of Johnson, both out of, and in the presence of McCarty, that the engine had been paid for, and they were induced to take the mortgage. Johnson's evidence was not obtained, nor his whereabouts accounted for on the trial. There is an apparent conflict between appellants and the son of Larue on the one hand and McCarty on the other, as to two points: the latter claimed that between September 29, 1904, and October 6, 1904, he had said to appellants, upon inquiry by them of him as to Ingler's responsibility, that he did not know as to that, but that he was getting $2,000 cash, and that would pay for installing the engine, and if Ingler did not pay he would take it out, and that he had not said to appellants that appellee never sold on time, while appellants, and the son of one of them, deny that any such statement was made, claiming that the talk about the payment of $2,000 and taking the engine out, was after it had been installed. The alleged conversation between McCarty and appellants was not inconsistent with, or at variance with Johnson's statement that the engine had been paid for, as it occurred, if at all, before his statement was made.

It is shown that the engine could not be removed without breaking up the cement foundation, in itself a very difficult and expensive thing, or by cutting into it in different places at right angles to the bed-plates of the engine, at such width and depth as that jacks could be placed under the bedplates, the lowest estimates fixed at twelve inches deep horizontally, and twelve inches deep vertically, and raising the engine, that weighed twenty tons, and cutting off the anchor bolts, and that the foundation would be left practically worthless. The court did not make a special finding of the facts, but did make a full general find-

ing, in which it found that appellee was the owner of and
entitled to remove the property. The court made no find-
ing as to whether the real estate would be damaged by the
removal, unless it be inferred from a finding that it was
entitled to removal, but as indicating the mind of the court
upon the question, appellee was required to file a bond for
$1,500 for the payment of the damage that would accrue
by the removal. It must be apparent that if appellee was
entitled to take the property, it was because the real estate
would not be damaged, and, if so, it should not have been
required to give a bond of indemnity, so that the infer-
ence is irresistible that it was not found that the real es-
tate would not be damaged. It is manifest that the court
sought to adjust the questions before it upon wholly equit-
able considerations. Appellants had sold the property for
$24,000. They had received $4,000 cash, and had bid in the
property at sheriff's sale for $18,000. The value of the
engine in place was $11,500, and the value of the new build-
ing was from $800 to $1,000. Johnson received about $250
net per month during the time he was in possession, and put
nothing back into the plant except the building, and such
sum as he may have paid in installing the engine. Appel-
lants sold the property pending the suit, including the en-
gine, but at what price does not appear, and their deed ex-
cepted the engine from the warranty, and the vendee as-
sumed the payment of the legal fees of the pending litiga-
tion. Under these facts, the reason of the course pursued
by the court becomes somewhat apparent, in the attempt to
adjust the question on purely equitable grounds. Appellee
made its claim as of a legal right, and stood upon that claim.
If that claim was valid, it should not have been required to
give a bond of indemnity as against damage to the real es-
tate, unless it could be said that it was purely for the pro-
tection of appellants against unnecessary or negligent

6. conduct in the removal, and as to that matter, appel-
lants could not complain, and appellee is not com-

plaining. But appellee relies upon a strictly legal title, and must recover, if at all, upon the strength of that title.

It is not disputed that Johnson told appellants that the engine had been paid for before their deed was delivered and the mortgage taken, and they had no notice to the contrary, unless it be from the testimony of McCarty, which is not inconsistent with the statement of Johnson, made later, that it had been paid for.

It appears to have been a conspiracy to obtain possession of appellants' property for exploitation, and appellee is responsible for making it possible, by holding out as 4. its agents those who deceived appellants by their representations, and, while acting as agents in the sale of the property, were really selling to themselves, though pretending that their action was in furtherance of their agency to sell engines, and at the same time concealing from appellants the real motives, facts, and terms of the agreement, and personally procuring the execution of a mortgage to cover such engine. If it be said that the negotiations by Johnson were such as to put appellants on their guard that he was himself a purchaser, and that his interest as purchaser was antagonistic to his duty to his principal, so as not to bind it by his statements, it is also to be said that McCarty's statement that appellee always required cash for its engines, and his knowledge of Johnson's acts, and Johnson's statement, in the presence of McCarty, who did not appear to appellants in any other capacity than as appellee's general agent, that he had paid for the engine, were 7. strongly calculated to throw appellants off their guard, and this situation was sufficient to invoke the rule that where one of two equally innocent persons must suffer, he who puts it in the power, or confers the apparent authority upon one to injure another, must bear the loss. *Moore* v. *Shields* (1889), 121 Ind. 267; *Du Souchet* v. *Dutcher* (1888), 113 Ind. 249; *Wolfe* v. *Pugh*

(1885), 101 Ind. 293; *Beem* v. *Lockhart* (1891), 1 Ind. App. 202; *Teter* v. *Hinders* (1862), 19 Ind. 93.

Appellee cannot escape the results produced by the acts and declarations of its agents within the scope of their general employment, by reason of their violation of general, secret, or express instructions. *American Tel., etc., Co.* v. *Green* (1905), 164 Ind. 349; *Pittsburgh, etc., R. Co.* v. *Kirk* (1885), 102 Ind. 399, 52 Am. Rep. 675; *Over* v. *Schiffling* (1885), 102 Ind. 191; *Ochsembein* v. *Shapley* (1881), 85 N. Y. 214; *Mott* v. *Consumers Ice Co.* (1878), 73 N. Y. 543; *American Quarries Co.* v. *Lay* (1906), 37 Ind. App. 386; Mechem, Agency §§708, 714, 715, 717; Cooley, Torts (2d ed.) 625, 626, 630-633.

It is beyond question that appellee recognized Johnson as its agent in the sale of the identical engine. He put the engine in place under representations that it had been paid for, and was covered by appellants' mortgage, as a part of their security, and appellee cannot be heard to deny the representations he made. *Wire* v. *Wyman* (1884), 93 Ind. 392; *Blakemore* v. *Taber's Executor* (1864), 22 Ind. 466; *Mallett* v. *Page* (1856), 8 Ind. 364.

It also appears to us from the evidence that the real estate would be seriously damaged by the removal of the engine, and that the court had this in mind in requiring the bond. *Bass, etc., Mach. Works* v. *Gallentine* (1885), 99 Ind. 525; *Fifield* v. *Farmers Nat. Bank* (1893), 148 Ill. 163, 35 N. E. 802, 39 Am. St. 166; *Fuller-Warren Co.* v. *Harter* (1901), 110 Wis. 80, 85 N. W. 698, 53 L. R. A. 603, 84 Am. St. 867; *Gunderson* v. *Swarthout* (1899), 104 Wis. 186, 80 N. W. 465, 76 Am. St. 860; *Chickering-Chase Bros. Co.* v. *Moulton* (1906), 107 N. W. (Iowa) 434.

If the case stood upon equitable considerations, the writer would be disposed to regard the result reached by the trial court as perhaps not reversible error, but a majority of the court are of the opinion that it can-

not be based upon equitable considerations, and that appellee has not so based it, but upon an absolute claim of legal title, and that it should look to those who occasioned its loss, if one must accrue.

There is another important and controlling fact in the case, and that is that the mortgage, which by its terms covered property to be put in the plant, was recorded at least three months before the engine was even shipped, and of that mortgage appellee had constructive notice, and must be held to have acted at its peril.

The judgment is reversed, with instructions to the court below to sustain appellant's motion for a new trial, and for further proceedings not inconsistent with this opinion.

Jordan, J., absent.