## JAMES J. HEIDEGGER v. GEORGE P. BURG.[1]

May 25, 1917.

Nos. 20,203—(51).[2]

**Exchange of property — fraud — measure of damages.**

In this action to recover damages for fraudulent representations alleged to have been made by defendant in an exchange of land owned by plaintiff for shares of stock in certain corporations, it is *held*:

(1) The evidence sustains the finding of the jury that such fraudulent representations were made and relied on by plaintiff.

(2) The evidence as to the damages sustained by plaintiff was insufficient to support the verdict.

(3) The measure of damages was the difference between the value of the land and the value of the stock at the time of the transaction. It was error to instruct that the measure of damages was the difference between the value of the stock if it had been worth par, as represented, and its actual value, it not being proved or admitted that the value of the land was the same as the par value of the stock.

(4) The court correctly instructed that defendant was bound by representations made by his agents employed to sell the stock.

Action in the district court for Hennepin county by James J. Heidegger to recover $5,165 for fraudulent representations. The case was tried before Waite, J., and a jury which returned a verdict in favor of plaintiff for $1,676.50. From an order denying his motion for a new trial, defendant appealed. Thereafter Francis W. Carlson, as administrator of the estate of plaintiff, deceased, was substituted as plaintiff. From the judgment entered pursuant to the verdict, the administrator appealed. Reversed and new trial granted.

*Jesse E. Greenman* and *P. J. McLaughlin,* for appellant.

*H. E. Fryberger,* for respondent.

BUNN, J.

This action was brought by James J. Heidegger to recover damages

[1]Reported in 162 N. W. 889.
[2]April, 1917, term calendar.

for fraudulent representations alleged to have been made by defendant in an exchange of land owned by Heidegger for shares of stock in certain corporations. There was a verdict in favor of plaintiff for $1,676.50. Defendant appealed from an order refusing a new trial, and also from a judgment entered on the verdict. Heidegger died before the appeal from the judgment was perfected, and the administrator of his estate was substituted as plaintiff.

The chief grounds relied upon for reversal are that the evidence was insufficient to sustain the verdict, misconduct on the part of plaintiff and his counsel, and errors in the reception of evidence and the court's charge to the jury. A brief statement of the facts follows:

Plaintiff owned 560 acres of land in Pine county subject to a mortgage of $2,800, and on October 1, 1912, entered into a contract with defendant, wherein plaintiff agreed to convey the land to defendant subject to the mortgage, and defendant agreed to pay the mortgage and transfer to plaintiff 59 shares of the capital stock of the Twin City Mission Furniture Company and 138 shares of the capital stock of Peek Dahlberg Shaw Company. The contract was silent as to the value of either the land or the stock. Plaintiff executed and delivered the deed, and defendant delivered to plaintiff the stock certificates. Plaintiff and defendant never met, the transaction being mainly carried on by Keenan & Clarey for plaintiff, and by defendant's brother on behalf of defendant. The action was begun in 1916, plaintiff alleging that defendant fraudulently misrepresented the stock of each of the corporations to be worth more than its par value, $100 per share in the case of the furniture company and $10 per share in the case of the Peek company; whereas the stock of the first corporation was worth not to exceed 50 cents on the dollar, and the stock of the second corporation was worthless, all to the knowledge of defendant. The answer denied the charges of fraud, and alleged that the stock was worth par at the time of the trade, and was of equal market value to that of the land. There was a reply, and the issues were tried to a jury.

1. Plaintiff testified that defendant's brother stated to him that the furniture company stock was paying dividends of 15 per cent, the Peek company stock dividends of a less amount, and that both stocks were worth par. He also testified to statements of like purport made by

Keenan & Clarey, who seem to have been plaintiff's agents for the sale of the land and defendant's agents for the sale of the stock. It was admitted that neither corporation had ever paid any dividends. While plaintiff testified that he believed and relied upon these statements as to the value of the stock, it is clear that he did not altogether do so, as he investigated the affairs of both corporations through friends in whose judgment he had confidence. While defendant's brother and Keenan & Clarey denied making the representations as to dividends, and while the evidence is not over persuasive that plaintiff made the trade in reliance upon their statements, we are obliged to hold that the plaintiff made a case for the jury on this issue, and that the evidence is such that we should not disturb the jury's findings.

2. But there was another issue in the case, that of whether plaintiff was damaged, and if so, to what extent. This issue necessarily involved an inquiry as to the value of the stock at the time of the trade. It fairly enough appeared that some 15 months afterwards the furniture company went out of business, and the Peek company went into liquidation and that the stock of both corporations was then worth less than par, if it was worth anything, but we search the record in vain for any competent evidence that the stock was not worth par at the time it was sold to plaintiff, or if not, how much less than par it was worth. Plaintiff failed to compel the production of the books of the corporations, and the evidence of the witnessess called to testify to the value of assets, the liabilities and the value of the stock, if competent at all, was so wanting in probative force and so unsatisfactory that we cannot permit a verdict based on such testimony to stand. We need hardly say that the condition of the corporations a year and more after the transaction, not shown to have existed at that time, or to be due to causes then existing, was not evidence that had any tendency to prove the value of the stock at the time of the transaction.

3. The correct measure of damages was the difference between the value of what plaintiff parted with and what he received, that is, the difference between the value of the land less the mortgage and the value of the stock. The trial court held that the damages would be the difference between the value of the stock, if it had been worth par, and its actual value at the time when the transaction was entered into. This was

erroneous under our decisions, unless the evidence was conclusive, or it was admitted that the value of the land was $18 per acre, the price at which it was put in. At that price, after deducting the mortgage, its value would equal the par value of the stock. The court seemed to be of the opinion that, because in the negotiations the land was "talked about as being worth eighteen dollars per acre," that would be the value of what plaintiff parted with. We find no admission that the land was worth that amount, and certainly there was evidence that tended to show it was worth less. We think the instruction was erroneous.

4. The trial court charged that defendant was bound by the representations of Keenan & Clarey as to the value of the stock. While they were plaintiff's agents for the sale of his land, they admittedly represented defendant in the sale of his stock, there being evidence that they received a commission from him, unknown to plaintiff. We think the instruction was correct.

We pass the claim of misconduct on the part of plaintiff and his counsel, because there must be a new trial on other grounds. We trust that there will be no occasion again for an appeal based on such an assignment of error.

Judgment and order reversed and new trial granted.