MOYNES *v.* APPLEBAUM.

1. FRAUD—PRINCIPAL LIABLE FOR AGENT'S FRAUDULENT MISREPRE-
SENTATIONS—NOTICE.

In an action for fraud and deceit, based upon representa-
tions that a house sold to plaintiffs by defendants' agents
was constructed of stucco upon tile, when in fact it was
stucco upon wood, defendants were liable although the
misrepresentations were made by their agents without
their knowledge or consent.

2. APPEAL AND ERROR—ERROR IN RECEPTION OF TESTIMONY FAVOR-
ABLE TO APPELLANT NOT REVERSIBLE.

Where testimony by defendants' agent, who was called as
a witness by plaintiffs without announcing until later that
he was called for cross-examination under the statute,
was favorable to defendants, there was no reversible error
in its reception.

3. FRAUD—DAMAGES—EVIDENCE—ADMISSIBILITY.

Evidence showing the difference in the cost of construction
between stucco on tile and stucco on wood was properly
received for its bearing on the question of damages.

4. SAME—TRIAL—INSTRUCTIONS.

The trial court correctly instructed the jury that the
measure of damages was the difference between the value
of the premises as they were and their value had they
been as represented.

Error to Wayne; Des Voignes (L. Burget), J., pre-
siding.   Submitted January 24, 1922.   (Docket No.
128.)   Decided March 30, 1922.

Assumpsit by James A. Moynes and another against
Isaac Applebaum and another for fraud in the sale
of certain real estate.   Judgment for plaintiffs.   De-
fendants bring error.   Affirmed.

*A. W. Sempliner,* for appellants.

*Lloyd L. Axford* and *Max Hulett,* for appellees.

FELLOWS, C. J.    Plaintiffs bring this action to recover damages for fraud claimed to have been perpetrated on them by the agents of defendants in the sale of residential property in the city of Detroit.    The claimed fraudulent representations were that the house was stucco on tile, whereas in fact it was stucco on wood, making it less valuable than as represented. There was proof tending to show such representations by defendants' agents.    The undisputed testimony shows that Mr. Applebaum and his wife had no knowledge of such representation.    They were away from home when the transaction occurred.    Harry Applebaum is their son and is the bookkeeper in his father's office.    Before leaving, Mr. Applebaum directed his son to sell the premises at $16,000.    A real estate broker named Welch learned that the house was in the market and solicited its listing with him; this was done.    He interested plaintiffs in the proposition, and the house was shown to them by Harry, and it is claimed by them that he then made the representations complained of.    Plaintiffs made an offer of $15,250 for the premises.    Defendant Isaac Applebaum was wired to and accepted the offer.    An option was given, followed by a contract, and a substantial payment was made on the purchase price.    Some time after plaintiffs moved in they learned that the construction was stucco on wood.    There is no dispute but that the house is of that construction.    It is denied by Welch and Harry Applebaum that any such representations were made.    That question, however, is settled by the verdict of the jury.    The main question raised by defendants' counsel is the right of plaintiffs to recover from defendants in an action of fraud and deceit for the fraudulent representations of their agents where defendants had no knowledge of such representations and such representations were not authorized by them.

We are persuaded that this court has settled this question adversely to the contention of defendants' counsel. *Reeves* v. *Kelly,* 30 Mich. 132; *Busch* v. *Wilcox,* 82 Mich. 315; *Smith* v. *Construction Co.,* 175 Mich. 600. The son, Harry, was the agent of his father in making the sale. In selling the property he was acting within the scope of his authority; in making the sale he made certain representations; these were the instrumentalities used by him in his principal's business and for his principal's benefit and they thereby became the instrumentalities of the principal. He can not reap the harvest and refuse to pay for the seed. The cases cited by defendants' counsel, *Mayo* v. *Wahlgreen,* 9 Colo. App. 506 (50 Pac. 40); *Ellison* v. *Stockton,* 185 Iowa, 979 (170 N. W. 435); and *Dellwo* v. *Peterson,* 32 Idaho, 172 (180 Pac. 167), sustain his contention. To these may be added *Kennedy* v. *McKay,* 43 N. J. Law, 288 (39 Am. Rep. 581), and *Samson* v. *Beale,* 27 Wash. 557 (68 Pac. 180). But we think the great weight of authority is the other way. 2 Mechem on Agency (2d Ed.), § 1995, is as follows:

"Whether an innocent principal can be held liable in an action of deceit for the false representations of his agent has been much questioned. It has been held in some cases that such an action cannot be maintained, but the weight of modern authority is to the effect that the action is maintainable. Even though the principal may have had no guilty knowledge, the guilty knowledge of the agent is said to be imputable to him."

In 2 C. J. p. 856, in considering the subject of agency, it is said:

"Where an agent, in negotiating a transaction or making a contract on behalf of his principal, makes representations, declarations, and admissions in connection therewith respecting the subject-matter, they will be binding on the principal, where they are made at the time and as a part of the transaction, and although they are false and fraudulent, made without

the principal's knowledge and constitute a breach of trust against the principal."

In 1 Am. & Eng. Enc. Law (2d Ed.), beginning at page 1158, will be found the following:

"As in other cases of tort the principal is liable for the fraudulent acts of his agent in the course and within the scope of his employment though in fact the principal did not authorize the practice of such acts.

"Accordingly the fraudulent representations of an agent acting in the course of his employment and in reference to business within the scope of his authority will be binding upon the principal although in perpetrating the fraud the agent acted without the knowledge or consent of the principal."

Ruling Case Law thus tersely states the rule (21 R. C. L. p. 850):

"For frauds and misrepresentations of his agent within the scope of the employment the principal is liable no less than in other cases; and this although he had no knowledge thereof and has received no benefit therefrom."

In *Haskell* v. *Starbird,* 152 Mass. 117 (25 N. E. 14, 23 Am. St. Rep. 809), it was held (we quote from the syllabus):

"False and fraudulent representations made by an agent, general or special, employed to sell land will render the principal liable in an action of tort for deceit although the latter did not authorize them and did not know of them until after the conveyance."

Likewise we quote from the syllabus in *Rush* v. *Leavitt,* 99 Kan. 498 (162 Pac. 310):

"One who sells land through an agent is responsible in damages for the fraud of the agent in making false statements concerning its character by which the sale is effected even although the principal had no knowledge of their having been made."

Mr. Justice Lyon, speaking for the supreme court of Wisconsin in *Law* v. *Grant,* 37 Wis. 548, said:

"The cases cited by the learned counsel for the defendant abundantly demonstrate the rule of law to be, that if Richard S. Law acted as the agent of the plaintiff in negotiating the sale of the mortgaged premises, the latter is responsible for all the means employed by his agent to effect the sale. If the agent effected it by means of false representations or fraud of any other description, although without authority from the plaintiff to do so, and although the plaintiff was entirely ignorant that he had done so, the legal status of the plaintiff is precisely the same as it would have been had he made the false representations or committed the fraudulent acts to the same end, in person."

See, also, *Crump* v. *Mining Co.*, 7 Grat. (Va.) 352 (56 Am. Dec. 116); *Rhoda* v. *Annis*, 75 Me. 17 (46 Am. Rep. 354); *Larue* v. *Engine Co.*, 176 Ind. 609, 620 (96 N. E. 772); *Millard* v. *Smith*, 119 Mo. App. 701 (95 S. W. 940); *Wheeler* v. *Baars*, 33 Fla. 696 (15 South. 584); *Tompkins* v. *Triplett*, 110 Ky. 824 (62 S. W. 1021, 96 Am. St. Rep. 472); *Hartford Life Ins. Co.* v. *Sherman*, 223 Ill. 329 (78 N. E. 923); *Heidegger* v. *Burg*, 137 Minn. 53 (162 N. W. 889); *Franklin Fire Ins. Co.* v. *Bradford*, 201 Pa. 32 (50 Atl. 286, 55 L. R. A. 408, 88 Am. St. Rep. 770). The trial judge properly overruled defendants' motion for a directed verdict.

Plaintiffs' counsel called as a witness Mr. Welch, the real estate broker who acted for and was paid by defendants, but did not announce when he called him that he was calling him for cross-examination under the statute. Later he made such announcement. Objection is made to some of his testimony, but a reading of it is convincing that defendants were benefited rather than harmed by it. The witness denied that either he, or defendants' son Harry, in his presence made any representation such as plaintiffs claimed and his testimony as an entirety sustained defendants' claim and refuted that of plaintiffs. There was no reversible error in the reception of this testimony.

Evidence was introduced by plaintiffs showing the

difference in the cost of construction between stucco on tile and stucco on wood. This evidence had some tendency to establish the amount of damages which was correctly stated by the court to be the difference between the value of the premises as they were and the value of them if they had been as represented. There was no error in receiving this testimony and allowing the jury to consider it for this purpose. It was not receivable for the purposes stated when it was offered by plaintiffs' counsel, who seem to have had a clearly erroneous conception of the measure of damages. The court, however, properly instructed the jury as to its use.

Finding no prejudicial error in the record, the judgment will be affirmed.

WIEST, CLARK, BIRD, SHARPE, MOORE, and STEERE, JJ., concurred.

The late Justice STONE took no part in this decision.