Joseph I. Bulger, Appellant, v. Doyle, O'Connor and Company, Appellee.

Gen. No. 43,910.

Opinion filed January 6, 1947.   Released for publication January 20, 1947.

JOSEPH I. BULGER, *pro se;* ODE L. RANKIN, of Chicago, of counsel.

THOMAS S. ROSENBERG and ALFRED ROY HULBERT, both of Chicago, for certain appellee.

ALFRED ROY HULBERT, of Chicago, for certain other appellee.

MR. JUSTICE FEINBERG delivered the opinion of the court.

Plaintiff, a lawyer, sued defendants for $2,100 for services, the amount alleged to have been agreed upon. A trial with a jury resulted in a verdict for plaintiff for that amount.   After verdict, plaintiff dismissed the suit as to defendants Camden and Deuell, leaving Doyle, O'Connor & Company, a corporation, the only defendant.   A motion for a new trial was filed for this defendant.   The court granted the new trial, and plaintiff appeals from that order.

Except as otherwise noted, these facts are undisputed.   Defendant was in the business of buying and

selling securities. Camden was manager of its municipal bond department. The Hawthorne park district had issued $70,000 face value of bonds at 5 per cent interest. The Chicago Policemen's Pension Fund had purchased the entire issue, some of which were about to mature. The district had no ready money with which to pay the bonds. The pension fund was offering the bonds for sale and asked defendant to bid on them. Camden, on behalf of defendant, procured an exclusive 10-day option, which was extended several times, to buy the entire issue and set about to get the district to consider issuing a refunding bond issue. He enlisted the aid of one, Duggan, who was working with him in the bond department of defendant. Duggan undertook to persuade the park district to authorize such an issue and negotiated with the officers of the district. His daily efforts, extending from January 25, 1943, to February 4, 1943, brought no result. Deuell, an independent broker, had business dealings with Camden on behalf of defendant in previous bond issues.

Deuell testified that he talked with Camden about this bond issue in question about February 3, 1943, and while in Camden's office, and in his presence, he called plaintiff to make an appointment to talk with him about it. This occurrence Camden denied. The appointment was made for the afternoon of the day of the telephone call, which plaintiff testified was on February 4. Deuell was not so specific about the date. Deuell further testified that he went with Camden to plaintiff's office on the afternoon of February 4, pursuant to appointment, and there discussed with plaintiff the district bond issue, part of which was maturing, and asked whether he (plaintiff) could get the park board to issue a refunding bond issue at 4½ per cent interest to take the place of the 5 per cent issue. The charge for his service was discussed, and plaintiff stated he should have 3 per cent of the total bond issue,

namely, $2,100, for his services, in the event he was able to get the park district to authorize the refunding bond issue; that Camden and Deuell agreed to the price for his services.

Camden denies this version of the conference and testified that he, by accident, met Deuell at the corner of Jackson Boulevard and LaSalle street in Chicago, who invited him to go to plaintiff's office, which Deuell told him was around the corner from Camden's office but turned out to be eight blocks away, and that he did not know what the purpose of the visit to plaintiff's office was; that in plaintiff's office he listened to the discussion about the district bond issue but said nothing, and did not agree to hire plaintiff nor agree to pay him for any services. Camden, in this testimony, stands alone against the testimony of plaintiff and Deuell.

Plaintiff further testified that on the evening of February 4, 1943, he went to a meeting of the park district and there presented his reasons why the park board should authorize a new bond issue to refund the present outstanding issue, the new issue to bear 4½ per cent interest instead of 5 per cent; that he convinced the park board, and that same evening the board voted to refund the issue; that the following day he called Camden and reported to him what he had accomplished at the park board meeting and told Camden to go ahead and prepare whatever documents were necessary. Camden denied this conversation ever took place.

It appears that defendant proceeded at once to employ Holland M. Cassidy, a recognized bond attorney, to draft the necessary papers and ordinance for formal passage by the park board. It stands undisputed in the record that Cassidy (who died before the trial), a few days later, called plaintiff and asked him for the names of the park officials, which he needed in drafting the necessary papers; that plaintiff obtained the infor-

mation desired by Cassidy and furnished the same to him.

In this purchase of the bond issue from the pension fund and the surrender of it to the park board for the new bond issue, and in the resale of the new bonds to the public, there was a potential profit to be made by defendant. Deuell was to share in the profit. The deal with the park board and the pension fund was carried through to completion, and when plaintiff, within a few days, learned of the completion of the transaction, he called Camden about the payment of his fee. It was then that Camden told him he knew nothing about any fee to him and he knew of no reason why he should be paid, following which, plaintiff brought this action.

The controlling question on this appeal is whether there was a hiring of plaintiff by defendant, through Camden, and whether there is proof of authority on the part of Camden to bind defendant with any such alleged hiring. In considering this question, it should be noted that with the general verdict, the jury also answered in the affirmative three special interrogatories, submitted at the request of defendant. The affirmative answers were that there was a definite contract or agreement of employment between plaintiff and defendant, entered into on February 4, 1943; that Camden had authority and power to employ plaintiff to render legal services on behalf of defendant in the matter of the refunding of certain bonds of the park district, and that defendant authorized and empowered Camden to contract and agree with Bulger for the payment of $2,100 for legal services to be rendered by plaintiff to defendant.

No questions are presented as to the rulings of the court upon the evidence or the instructions given. The trial judge, in stating his reason for granting a new trial, said: "I don't think a contract has been established. I think a contract might be established if new

proof were put in. I am going to allow the motion for a new trial.''

■ ■ If the hiring of plaintiff was within the apparent scope of Camden's authority, then all the remaining facts, disputed and ,undisputed, and the credibility of the witnesses were proper matters for the jury to pass upon. In our judgment, upon the facts presented in this record, the alleged hiring of plaintiff was within the apparent scope of Camden's authority as manager of the bond department. The jury having specifically found the facts as already indicated, we cannot say that the findings of the jury were against the manifest weight of the evidence. We are convinced that the facts amply support the conclusion reached by the jury.

In *Grand Pacific Hotel Co. v. Pinkerton,* 217 Ill. 61, the question of fact was whether, when the contract of hire was made, Glennie, manager of the hotel company, made the contract for the hotel company, and whether he had authority to do so. It appeared that before the alleged hiring, the by-laws of the company had been changed to make Glennie the assistant manager instead of manager. Nevertheless, it was held that as manager or assistant manager, he had authority to bind the company.

In *Hughey v. Sbarbaro,* 181 Ill. App. 396, it was held that a contract of hire, made by a sales manager for work and materials, was within the apparent scope of his authority.

In *Hartford Life Ins. Co. v. Sherman,* 123 Ill. App. 202, affirmed 223 Ill. 329, it was said:

''We are of opinion that under such circumstances the Shermans were not required to be suspicious, to question his authority, or to demand and inspect his letter of instructions. A person dealing in good faith with an agent who is apparently acting within the scope of his authority is not responsible for any breach of trust

the agent may perpetrate upon his principal. Where one of two innocent contracting parties must suffer from the . . . unauthorized act of an agent, the loss should fall on him who selected the agent and whom the agent represents. One dealing with an agent is not bound to be on the watch lest the agent wrong his principal. Where the acts of the agent will bind the principal, his representations respecting the subject-matter, made while he is transacting the business and executing his authority, will also bind the principal, even though such representations are fraudulent.''

In *Northern Illinois Coal Corp. v. Cryder,* 361 Ill. 274, 287, it was held:

'' . . . the principal is bound to the same extent by the authority assumed and exercised, with the apparent authority of the principal, as by the authority actually granted.''

It is urged by defendant that there was no proof of any holding out to the plaintiff by the defendant of Camden as manager. Where it is admitted that the agent in question is the manager, no proof is necessary that there was any such holding out. Moreover, Deuell knew he was manager and introduced Camden to plaintiff as manager of the bond department of defendant. This was clearly in harmony with the admitted fact that he was the manager, and there was no need, under the authorities cited, for the plaintiff to inquire of defendant whether Camden was the manager.

We think the trial court was in error in granting a new trial. The order granting a new trial is reversed and the cause remanded with directions to enter judgment for plaintiff upon the verdict of the jury.

*Reversed and remanded with directions.*

O'CONNOR, P. J., and NIEMEYER, J., concur.