## Albert C. Banker, Defendant in Error, v. Nicholas E. Ford, Plaintiff in Error.

### Gen. No. 14,776.

1. MALICIOUS PROSECUTION—*what part of res gestae.* In actions for malicious prosecution, as part of the *res gestae,* the defendant should be allowed to prove all the circumstances out of which the prosecution arose and the various steps taken before the warrant of arrest was issued. Such defendant might prove his own good character as an element to ward off any suspicion that he might have acted without probable cause, and, on the other hand, he might prove the bad character of the accused as some justification for his action and for entertaining the honest belief that such accused was guilty of the offense charged.

2. MALICIOUS PROSECUTION—*what not competent.* Irregular proceedings by the justice before whom the criminal prosecution was

initiated are not competent to affect the defendant in an action for malicious prosecution.

3.   EVIDENCE—*what competent upon direct impeachment.*   Witnesses who know the party sought to be impeached in the community in which he resides are competent though they do not live in the immediate neighborhood of such party.

Action for malicious prosecution.   Error to the Municipal Court of Chicago; the Hon. HENRY C. BEITLER, Judge, presiding.   Heard in this court at the October term, 1908.   Reversed and remanded. Opinion filed December 6, 1909.

Statement by the Court.   The record brought here for our review discloses that the cause of action is malicious prosecution, and that a trial before court and jury resulted in a verdict and judgment for $750 in favor of plaintiff and against defendant, the latter of whom asks a reversal of the judgment.

The circumstances involved in this controversy are in substance that defendant was assignee of plaintiff's note secured by a mortage on chattels owned by him at the time the note and mortage were given, and at the time of the arrest hereinafter alluded to were in the possession of plaintiff at his place of business on the second floor of 1424 Michigan avenue, Chicago.   The mortgage contained, among other provisions what is designated among lawyers as an "insecurity clause".   In reliance upon this clause of the mortgage defendant sought to foreclose his lien on the chattel property.   Such purpose he made known to plaintiff. An employe of plaintiff was by agreement of the parties made custodian of the mortgaged chattels pending some negotiations for a settlement.   After plaintiff concluded he was unable to comply with defendant's proposed terms of settlement he consented that the chattels described in the mortage might be removed from 1424 Michigan avenue and sold.   Defendant in writing waived notice of sale and stipulated that the chattels might be sold April 6, 1908.   While defendant was engaged in moving the chattels on March 30, 1908, plaintiff locked the door of a small room containing

a switch which operated an elevator, by means of which defendant desired to carry the chattels out of the building. Defendant protested against this action of plaintiff and set up a claim that some of the property covered by the mortgage was in that room. This plaintiff denied and defendant still insisted on his right of access and threatened to break into the room unless plaintiff opened it. To intimidate defendant and deter him from getting into the closed room to operate the switch which controlled the elevator and from taking the goods out of the building by way of the elevator, plaintiff procured a gun and exhibited it to defendant and handled the gun in such a way that it was seen by others, and used language from which those present might conclude that the gun would be fired if defendant persisted in his purpose of breaking into the locked room. Defendant left the premises, proceeded to a police station and there made complaint against plaintiff, for whom a "peace warrant" was issued, under which he was arrested by a Chicago policeman, who, finding the gun upon his person, took it away from him. Plaintiff gave bail at the station and was released without having been put into a cell. He was tried for making "threats to kill" and was discharged. Rulings of court on the evidence and in its instructions to the jury are principally relied upon for a reversal.

JOHN M. HUMPHREY and J. MARION MILLER, for plaintiff in error.

HOWARD AMES, for defendant in error.

MR. PRESIDING JUSTICE HOLDOM delivered the opinion of the court.

In actions for malicious prosecution, to entitle a plaintiff to prevail he must, in the first instance, establish by his proofs a want of probable cause for commencing the prosecution complained about. Such is an elementary principle in actions of this character and cannot be dispensed with. From a want of probable

cause malice may be inferred. But proof of malice without proof of want of probable cause is insufficient to warrant a recovery. Or, in other words, want of probable cause is not inferable from malice, notwithstanding the converse of this proposition is the law. These fundamental propositions plaintiff's counsel has ignored in his brief and argument. He apparently does not regard them as being of any controlling importance to a decision.

The early case of Israel v. Brooks, 23 Ill. 526, is instructive as applied to the facts and law of the case at bar. Mr. Justice Breese, speaking for the court, said: "The action for malicious prosecution is necessarily viewed by the courts with great jealousy, from public considerations, as few men could be found who would be willing to originate a criminal prosecution if, on failure to establish the guilt of the accused, he himself was to be subjected to an onerous and expensive suit. Anciently it was doubted if the action would lie unless founded upon conspiracy. It is now, however, well established such actions will be maintained, but at the same time the onus is upon the party bringing the action to show that the criminal prosecution was the offspring of malice and without any probable cause to justify it—that the prosecutor had no sufficient reason to believe the accused guilty. If these are wanting—if malice and want of probable cause do not exist—the action must fail. * * * If there be probable cause for the prosecution, the malice of the prosecutor weighs nothing, though the accused be innocent."

The rulings of the trial judge upon the admission of much testimony offered by defendant were altogether too narrow and resulted in excluding important evidence tending to exculpate him from the charge made. As a general proposition in cases of this nature, as part of the *res gestae,* defendant ought to be allowed to prove all the circumstances out of which the prosecution arose and the various steps taken before the

warrant of arrest was issued. He might prove his own good character as an element to ward off any suspicion that he might have acted without probable cause, and on the other hand he might prove the bad character of the accused as some justification for his action and for entertaining the honest belief that plaintiff was guilty of the offense charged.

The admitted circumstances of the occurrence leading to the arrest amount to a breach of the peace by plaintiff, if anything. He was tried for and acquitted of "making threats to kill", which is not a crime by either the common or statute law. The warrant under which plaintiff was apprehended was a "peace warrant", and if he was amenable to discipline at all it was in being held in bonds to keep the peace. *Vide* secs. 1 to 6, div. 5, chap. 38, R. S. The failure of the magistrate before whom plaintiff was brought to proceed in pursuance of the statute *supra* is in no way, nor for any reason, imputable to defendant.

While the proceedings before the magistrate were admissible as evidence of the prosecution and discharge of plaintiff, they in no way tended to establish a want of probable cause, but merely the right of plaintiff to maintain the suit. The note and chattel mortgage should not have been received in evidence when offered by plaintiff, as they did not tend to throw any light upon the question either of malice or want of probable cause. Their admission at the instance of plaintiff may have had the effect of prejudicing the jury against defendant. If the right of defendant to be upon the premises of plaintiff when the gun episode occurred had been disputed, then defendant might have justified such right under the provisions of the chattel mortgage, but that it was not admissible on the part of plaintiff we think clear.

Defendant attempted to prove the bad character of plaintiff by impeaching his reputation for truth and veracity, and asked of several witnesses questions substantially in the form of this one: "Are you ac-

quainted with plaintiff's general reputation for truth and veracity among his neighbors and friends and business associates in the city of Chicago?" Objections to this and similar questions by counsel for plaintiff were sustained. We think such rulings were erroneous and prejudicial to defendant's defense. In this day of congested urban population, neighborhood of a person's residence is hard to define. In cities like London, New York and Chicago a man may be absolutely unknown to his next door neighbor and have no acquaintance with any who dwell near him, and yet he may the city round have a very extensive acquaintance and be well known in business and social circles. The former limitation of neighborhood in the sense in which it was at one time understood, is no longer of pratical application. Wigmore in his admirable work on evidence, at page 1616, in discussing this subject says, *inter alia:* "What the law then and now desired was a trustworthy reputation; if that is to be found among a circle of persons other than the circle of neighbors about a sleeping place, it should be received". "The rules of evidence must expand according to the exigencies of society", said Lord Ellenborough in Pritt v. Fairclough, 2 Camp. 305; State v. Henderson, 29 W. Va. 147.

The instructions as a whole are bad and were given upon an erroneous theory of the case. The jury should have been informed in some one of the instructions that plaintiff could not recover unless they believed from the evidence that defendant, in instituting the prosecution, had no probable cause to believe plaintiff guilty of the offense charged against him.

The judgment of the Municipal Court is reversed and the cause remanded.

*Reversed and remanded.*