VANEK v. SOUMAR.

1. EXCHANGE OF PROPERTY — FRAUD — PARTY DEFRAUDED MAY AFFIRM AND ASK FOR CANCELLATION OF MORTGAGE GIVEN.

Where plaintiffs, after an exchange of properties, discovered that they had been defrauded, they had a right to affirm the contract and to call defendants to account for the fraud, and to have a mortgage given by plaintiffs to defendants canceled if the damages sustained reached the amount of the mortgage.

2. SAME — DEFRAUDED PARTY ENTITLED TO RELIEF SOUGHT — NOT COMPELLED TO RESCIND.

Where the trial judge found defendants guilty of the fraud charged, he was in error in compelling plaintiffs to amend their bill to rescind the contract against their

desire, especially where defendants asked no affirmative relief, and the property received by them had passed through several hands, had been neglected, and could not be returned in the condition it was at the time of the exchange.

3. SAME—FRAUD—MORTGAGES—PARTICIPANT IN FRAUD COULD NOT BE INNOCENT PURCHASER OF FRUIT THEREOF.
   Defendant broker, who made fraudulent representations in negotiating the exchange, could not become an innocent purchaser of the mortgage given by plaintiffs on the property received by them.

4. SAME—DAMAGES—EVIDENCE—SUFFICIENCY.
   Evidence *held*, sufficient to establish that plaintiffs' damages equaled the amount of the mortgage sought by them to be canceled.

Cross-appeals from Ottawa; Cross (Orien S.), J. Submitted January 10, 1922. (Docket No. 73.) Decided March 31, 1922.

Bill by Frank Vanek and another against John Soumar and another for the cancellation of a mortgage given upon an exchange of certain real properties. From the decree rendered, all parties appeal. Reversed, and decree entered for plaintiffs.

*Charles E. Misner,* for plaintiffs.
*Lillie & Lillie,* for defendants.

WIEST, J.    Plaintiffs owned a flat building in the city of Chicago, and, feeling the urge of "back to the soil," desired to exchange the property for a farm.    Defendant John Soumar owned an 89-acre farm in Ottawa county, this State, and had it listed with defendant Frank J. Grill, a real estate agent in Chicago, to sell or exchange.    Through negotiations conducted by Mr. Grill, and after he had examined plaintiffs' property and plaintiffs, accompanied by Mr. Grill, had visited and examined the Ottawa county farm, an exchange was made August 1, 1918.    Plaintiffs received the

farm and gave Mr. Soumar a $2,000 mortgage thereon, and defendant Soumar received the Chicago property subject to a $4,000 mortgage thereon. Defendant Soumar, on August 14, 1918, conveyed the Chicago property to Frank Adamek, who sold it on February 28, 1920, to Elsie Krecek, who sold it to Alex Matzkanin. Plaintiffs took possession of the farm August 1, 1918, and discovered that Mr. Grill's representations in regard to the value of the farm and the fertility and character of the soil and the crops it would grow and the income it would provide, were all false in fact. The plaintiffs found the farm was mostly blow sand and irreclaimable swamp and "then the eyes of them both were opened," and they knew they had been defrauded.

Plaintiffs affirmed the exchange and filed the bill herein to have a cancellation of the $2,000 mortgage given to defendant Soumar, claiming that in equity and good conscience it should be done in satisfaction of the misrepresentations made and the fraud accomplished thereby, and also asked for additional damages. Defendants Soumar and Grill denied the fraud alleged and asked for the dismissal of the bill. The defendant Rolnicze does not appear to have been concerned in the fraud, and was dropped in the consideration of the case, and in speaking of defendants in this opinion we refer to Soumar and Grill.

At the hearing the trial judge found defendants Soumar and Grill guilty of the fraud charged, and by interlocutory decree ordered:

"That the defendants, within thirty days from this date, reconvey to the plaintiffs the property in Chicago, received in exchange for the farm mentioned in the bill of complaint, and the plaintiffs thereupon reconvey said farm and the personal property received in the exchange, to the defendant, John Soumar; that in such case, an accounting may be had as to any payments, improvements, profits or losses because of the

reconveyances, and that the deed of the Chicago property be deposited with the county clerk of Ottawa county, Michigan, to be delivered to the plaintiffs upon their depositing a deed of the farm and a bill of sale of the personal property to said John Soumar with said county clerk.

"It is further ordered, adjudged and decreed that in default of the defendants making such reconveyance and depositing the deed with the county clerk to be delivered to plaintiffs, as aforesaid, then that the mortgage of two thousand (2,000) dollars, given by the plaintiffs upon said farm, will be canceled and held for naught, and the said plaintiffs will hold said farm free and clear of said incumbrance."

Another decree was entered based upon a finding that defendants had failed to deliver the deed. This decree set aside, vacated and declared null and void the $2,000 mortgage, and directed defendants to deliver up the mortgage.

The mortgage on the farm was assigned by defendant Soumar to defendant Grill on August 14, 1918, and the decree set aside, vacated and declared such assignment void as against the plaintiffs and directed defendant Grill to deliver up the assignment. This mortgage included $200 loaned by Mr. Grill to plaintiffs.

Later the court made another decree ordering that:

"Plaintiffs be permitted to amend their bill of complaint so as to conform to the theory of rescission and submit proofs covering their damages as to such rescission. * * * The defendants may answer such amendment. * * * That the plaintiffs file the deed and bill of sale specified in the original findings, within thirty days from the date of this interlocutory decree, and in default of the plaintiffs filing the deed and bill of sale with the clerk of this court within said thirty days, that the bill of complaint in this cause be dismissed, and the deed deposited by Frank J. Grill will be returned to him. * * * That both of said deeds will be subject to the incumbrances on the property at the time of the exchange of the properties, and

the deed and bill of sale to be delivered by plaintiffs shall convey the property to Frank J. Grill. All conveyances to be held by the county clerk until the final decree herein."

March 28, 1921, another decree was entered finding defendants guilty of the fraud alleged in the bill, and decreed reconveyance by defendants to plaintiffs of the Chicago property and a conveyance of the farm and personal property by plaintiffs to defendant Soumar, and directed an accounting as to payments, improvements, profits or losses. The decree also provided for the cancellation of the $2,000 mortgage on the farm if defendants made default in depositing the deed to the Chicago property. The decree also provided that plaintiffs deed the farm to defendant Grill within 30 days and allowed plaintiffs certain items for the rental value of the Chicago building and improvements made upon the farm, and deducted therefrom the rental value of the farm and the interest due and found there was due from defendants to plaintiffs the sum of $720.50.

Plaintiffs amended their bill so as to ask for rescission but did so under protest by incorporating in the amendment the following:

"These plaintiffs, saving and reserving to themselves and without waiving the objections that the bill of complaint filed in this cause, was on the theory of affirmance of the contract, and the prayer of the said bill being in conformity to these averments and not wishing to rescind the said contract, but still desire to affirm and receive damages in accordance with such affirmance and in no manner wishing to be prejudiced by the filing of this amendment done in conformity with the interlocutory decree filed in this cause, and for that purpose only make the following amendment to said bill of complaint."

Plaintiffs and defendants appeal. The plaintiffs insist they have a right to be granted relief in accord-

ance with their affirmance of the exchange.    Defendants insist the bill should have been dismissed.

An examination of the record fully persuades us that the fraud complained of was practiced upon the plaintiffs through the false representations of defendant Grill.    That being true, plaintiffs had a right upon discovery of such fraud to affirm the contract and to call the defendants to account for the fraud practiced upon them, and have the mortgage given by plaintiffs upon the farm canceled if their damages sustained reached the amount of the mortgage.

May the trial court, in a case where the plaintiffs claim and establish the fact that they have been defrauded by defendants in an exchange of property, and have affirmed the contract and elected to keep the property received in the exchange, and where the defendants ask no affirmative relief, compel the plaintiffs to rescind against their desire to do so?    When the court found defendants guilty of the fraud charged, they were cast thereby to respond for the wrong they had committed.    The court having found the fraud practiced upon plaintiffs in the exchange, the plaintiffs were thereby clearly entitled to have relief in accordance with their election to affirm the contract of exchange.    There may be instances where, in order to do justice between the parties, the court may direct a return to the former status, even though the party complaining affirms, but this is not such a case.    Plaintiffs had a clear right to retain the farm.    The Chicago property had passed through several hands, had been neglected and could not be returned in the condition it was at the time of the exchange, and was no longer owned by Mr. Soumar. Defendant Grill, being the party who made the fraudulent representations, could not become an innocent purchaser of the mortgage growing out of the very fraud he practiced.    It is difficult to reach a conclu-

sion as to the exact loss occasioned plaintiffs by the fraud practiced upon them.   It is clear, however, that the financial injury equals the amount of the mortgage upon the farm.   Plaintiffs had a right, notwithstanding the fraud, to affirm the contract and ask that the mortgage, the fruit of such fraud, be canceled.   *Smith* v. *Werkheiser,* 152 Mich. 177 (15 L. R. A. [N. S.] 1092, 125 Am. St. Rep. 406).

In a case where the plaintiffs have been defrauded and an obligation, a part of the fruit of the fraud, is in the hands of the one practicing the fraud, and the plaintiffs affirm the contract, and seek relief from the fraud practiced, by way of having such obligation canceled in satisfaction of the wrong done, and the defendants ask that the bill be dismissed, but do not ask for rescission or any affirmative relief, the court should grant relief in accordance with the rule of law governing in cases of affirmance of contracts voidable for fraud.

We have considered the value of plaintiffs' equity in the Chicago property, and the value of the farm and personal property thereon, at the time of the exchange, and we are of the opinion that the court below was right in entering the decree discharging the mortgage.   The subsequent decrees in the court below changing the relief granted plaintiffs are reversed, and a decree will be entered in this court directing the defendant Grill to discharge the $2,000 mortgage upon the farm and surrender to plaintiffs the mortgage note within 20 days, and upon his failure to do so the decree of this court to operate as such discharge and the same may be recorded.   Plaintiffs will recover their costs against the defendants Soumar and Grill.

Fellows, C. J., and Clark, Bird, Sharpe, Moore, and Steere, JJ., concurred.

The late Justice Stone took no part in this decision.