ZADEL *v.* SIMON.

1. FRAUD—RESCISSION OF CONTRACT FOR FRAUD MUST BE PROMPT ON DISCOVERY.

> One seeking to rescind a contract on the ground of fraud must act promptly on the discovery of the fraud, but he need not act upon neighborhood gossip or before he has had a reasonable opportunity to satisfy himself that he has been defrauded.

2. SAME—EVIDENCE—VENDOR AND PURCHASER—PROMPTNESS QUESTION FOR JURY.

> Where plaintiff purchased a farm upon contract in the winter time when the snow was upon the ground, and waited until the following summer when the crops were growing before rescinding same on the ground that he had been defrauded by misrepresentations as to the quality and quantity of the land and also as to other particulars, the question as to whether he acted with reasonable promptness, under the circumstances of the case, *held*, properly a question for the jury.

On the question of waiver of purchaser's right to rescind contract for purchase of real property, see note in 30 L. R. A. (N. S.) 872.

3. VENDOR AND PURCHASER—FRAUD—RESCISSION—STATU QUO.
    That plaintiff in rescinding a contract for the sale of a
    farm on the ground of fraud was unable to place defend-
    ants *in statu quo* by returning certain feed, potatoes, and
    apples received with the farm and consumed thereon,
    would not defeat his right to recover, since the jury
    might deduct the value of the consumed property.

4. SAME—DEFENDANT VENDORS PROFITING BY FRAUD LIABLE FOR
   MISREPRESENTATIONS OF ONE.
    Where four defendants joined in the sale by contract of a
    farm, retaining the cash payment, they were all liable
    to respond in damages in an action for fraudulent mis-
    representations, on rescission of the contract, although
    said misrepresentations were made by only one of the
    defendants.

5. SAME—COVERTURE NO DEFENSE IN ACTION FOR FRAUD.
    The fact of coverture would not permit a married woman
    to retain money thus fraudulently obtained.

Error to Muskegon; Vanderwerp (John), J.   Sub-
mitted October 25, 1922.   (Docket No. 52.)   De-
cided December 5, 1922.

Case by Jacob Zadel against Louis Simon and others
for fraud in the sale of certain land.   Judgment for
plaintiff.   Defendants bring error.   Affirmed.

*Lovelace & Broek* and *Willard J. Turner*, for appel-
lants.

*Bunker, Rogoski & Dunn*, for appellee.

FELLOWS, C. J.   This action is brought to recover
money paid on a contract executed by defendants as
vendors and plaintiff as vendee for the sale of certain
real estate located near Ravenna in Muskegon county,
and which contract it is claimed plaintiff rescinded be-
cause of fraud in its procurement.   While not men-
tioned in the contract, it seems to be admitted that
certain personal property went with the land.   Plain-
tiff was a miner in the Upper Peninsula and claims

to have no knowledge of soils or of farming. His son and son-in-law were at Muskegon and came in contact with defendant Louis Simon. Their testimony tends to show that they saw the farm in the winter time when the snow was on the ground, and that defendant Louis Simon then represented that the farm was worth $9,000, consisted of 110 acres, was good soil, that there were 20 acres of the farm on the other side of a creek called Crockery creek, that a certain power company was going to erect a dam in the creek and that it had agreed to buy 20 acres of the land and pay $3,000 for it, and that there were 30 or 35 acres of wheat growing on the land. The son notified his father who came down to Ravenna, and it is claimed like representations were made to him, and that, relying on such representations, he paid $1,000 down and entered into the contract with defendants to purchase the land at $9,000. It is established beyond dispute that the farm consists of but 80 acres, that there is not 20 acres on the other side of the creek, that the power company had not agreed to buy 20 acres for $3,000. The proof reduces the acreage of wheat considerably, and there is quite convincing testimony that the soil is poor and the farm not worth over $2,000 to $2,500. Defendants deny the representations *in toto*.

Plaintiff moved on the farm in the spring and left it in the summer, when, as his testimony would indicate, the condition of the crops satisfied him he had been defrauded. He claims to have tendered back the contract, to have left the tools on the farm, but admits that some feed which went with the place had been fed to the stock and that some potatoes and apples had been used. He claims to have tendered some chickens back to defendant and upon his refusal to accept them he took them and cared for them. At the close of plaintiff's proofs, defendants' counsel

moved to strike out the testimony, dismiss the case and direct a verdict for defendants. These motions present the important questions in the case.

The rule is well recognized in this State that one seeking to rescind a contract on the ground of fraud must act promptly upon the discovery of the fraud. But this rule does not require one to act upon hearing neighborhood gossip or before he has had a reasonable opportunity to satisfy himself that he has been defrauded. In *Barron* v. *Myers,* 146 Mich. 510, Mr. Justice HOOKER, speaking for the court, said:

"The law does not require action to rescind before the defrauded person is reasonably certain that he has been defrauded. If he acts with reasonable promptness thereafter, it is sufficient. The law of laches should be used as a shield and not a sword."

In *Gridley* v. *Tobacco Co.,* 71 Mich. 528, it was said:

"To entitle a party to rescind a contract on the ground of fraud or false representations he must act promptly after he has discovered the fraud or the falsity of the representations. He would, however, be entitled to a reasonable time to investigate and to ascertain whether the representations made were true."

And in *Hicks* v. *Steel,* 126 Mich. 408, it was said:

"The interview in March indicates that they had a suspicion, if not belief, that the note was not good; but this alone was not enough to require an attempt to rescind."

See, also, *Place* v. *Brown,* 37 Mich. 575; *Hamilton* v. *Hulled Bean Co.,* 143 Mich. 277; *Cornell* v. *Crane,* 113 Mich. 460; *Simonds* v. *Cash,* 136 Mich. 558; *John Schweyer & Co.* v. *Mellon,* 196 Mich. 590. Nor does the defrauded party owe to the one who defrauds him an obligation to use diligence to discover the fraud. *Smith* v. *Werkheiser,* 152 Mich. 177 (15 L. R. A. [N. S.] 1092, 125 Am. St. Rep. 406); *Lewis* v. *Jacobs,* 153 Mich. 664.

Plaintiff's testimony tended to show that not long after he came to the farm he was told by some of his neighbors that he had been beaten in the deal, that he went to defendant Louis Simon and told him what he had heard; that Louis said to him:

"John, don't listen to them———— ————— ————— of Yankees, they tell you all kinds of bull."

Louis also said that if he did not "be good with him" and pay the taxes he would throw him off the farm, but if he was good with him he would grant certain extensions. The plaintiff was an ignorant foreigner. After this talk he cultivated the crops and remained on the farm until some time in the summer. The jury might legitimately draw the inference that he remained on the farm until the season had far enough advanced to demonstrate by the condition of the crops that the soil was not productive and that he had been defrauded. He then left the farm, leaving the crops as they were and declined, if one of defendants' witnesses told the truth, an offer of $400 for the crops. He had put on the farm 100 loads of manure. Defendants were not in any way prejudiced by plaintiff's occupancy of the farm until midsummer. We think the court correctly held upon the facts in the case that it was for the jury and not for the court to determine whether the plaintiff acted with reasonable promptness after he learned he had been defrauded.

The personal property was not mentioned in the contract, but it is undisputed that it was included in the deal. Some feed was used up; some potatoes which were of little value were fed to the hogs; a few apples were also consumed. This rendered it impossible to tender to defendants all that was received by plaintiff. Defendants' counsel insist that inasmuch as plaintiff could not under these circumstances place defendants *in statu quo* he can not rescind. The

trial judge entertained the view that plaintiff's inability to' return these small items did not defeat his right to recover and that the jury might deduct the value of the property consumed. This view is in accordance with the holdings of this court.

In *Wright* v. *Dickinson,* 67 Mich. 580 (11 Am. St. Rep. 602), the action was brought to recover money paid on a void contract. Mr. Justice CHAMPLIN, speaking for the court, said:

"In either case the purchaser must place the other party *in statu quo,* so far as is practicable for him to do so; and in either case the equities, so far as can be measured by a pecuniary standard, can all be settled and adjusted in the suit.

"In this case there is no occasion to call for the interposition of a court of equity. There are no deeds to be surrendered up and canceled, nothing which is required to be perpetuated by a decree. All there is to be ascertained can be ascertained by a jury; and that is, how much in equity and good conscience ought the defendants to repay of the purchase money they have received. All benefits which the plaintiff has received will have to be deducted, and these can be ascertained and allowed for in a common-law proceeding. The value of the timber cut and removed, and all other benefits which the plaintiff has derived from these contracts, can be adjusted in this action."

In *Snyder* v. *Markham,* 172 Mich. 693, the plaintiff had purchased certain "patent rights" and machines covered by the patents. Some of the machines had been sold. Plaintiff sought to rescind the contract for fraud. This court sustained his right so to do, the trial judge having charged the jury that they should deduct the value of the machines sold.

In *American Trust & Savings Bank* v. *Moore,* 161 Mich. 436 (137 Am. St. Rep. 518), it was said:

"We all know that in such a case it is usually the duty of the vendor to tender back the note or property paid, as a condition to the right to recover his property. Exceptions to this condition are when, as in this

case, the paper is worthless in the hands of the vendee, and where the vendor is unable to tender back the paper."

And in *Munzer* v. *Stern*, 105 Mich. 523 (29 L. R. A. 859, 55 Am. St. Rep. 468), it was said:

"The general rule requiring the surrender, or offer to surrender, what has been received, upon the rescission of a contract voidable for fraud, is not one of universal application, and has many exceptions. It does not require unreasonable or impossible things to be done."

See, also, *Henderson* v. *McRae*, 148 Mich. 324; *Weiser* v. *Welch*, 112 Mich. 134; *Bechtel* v. *Barton*, 147 Mich. 318.

Defendants' counsel also insist that the case should not have been submitted to the jury as to the defendants other than Louis. They made no representations and it is insisted they are not liable. In the recent case of *Moynes* v. *Applebaum*, 218 Mich. 198, we fully reviewed the authorities and held that the principal in a real estate deal was liable for the false representations of his agent. We need not go over the ground again. In the instant case all four defendants joined in the contract rescinded. Jointly they received and now hold $1,000 of plaintiff's money procured, as the jury found, by fraud. We do not perceive any rule of law which would be violated by requiring them jointly to respond, nor do we perceive that the fact of coverture would permit a married woman to keep money thus fraudulently obtained.

We have not taken up each assignment of error and considered it separately. All have been considered. None of the assignments of error would justify a reversal.

The judgment will be affirmed.

Wiest, McDonald, Clark, Bird, Sharpe, and Steere, JJ., concurred. Moore, J., did not sit.