## POTTER v. BOND.

No. 13506—Opinion Filed March 18, 1924.

**1. Appeal and Error—Complaint of Favorable Error.**

An instruction which is in favor of a party to the action and in no wise prejudices his rights is not subject to complaint for error on his part.

**2. Appeal and Error — Sufficiency of Exceptions—Instructions.**

To review the action of the trial court in giving instructions, it is necessary that the exceptions to the instructions as given be signed by the trial judge, as provided by section 542, Comp. Stat. 1921.

**3. Fraud—Sufficiency of Evidence.**

The record examined, and held, the evidence sufficient to go to the jury on the issue of fraud as to the item "other personal property."

**4. Witnesses—Impeachment for Truth and Veracity.**

The inquiry of impeachment for truth and veracity as to place is where the witness has his residence, whether permanent or temporary, and exhibits his conduct.

(Syllabus by Threadgill, C.)

Commissioners' Opinion, Division No. 3.

Error from District Court, Muskogee County; Guy F. Nelson, Judge.

Action by E. S. Bond against S. S. Potter. Judgment for plaintiff, and defendant presents error. Affirmed.

Jessie A. Harp, for plaintiff in error.

Neff & Neff and Harry G. Davis, for defendant in error.

Opinion by THREADGILL, C. This is an appeal from the district court of Muskogee county, and the plaintiff in error was defendant and defendant in error was plaintiff in the court below, and for convenience will be referred to here as they were there. The plaintiff brought suit against the defendant for damages which he claimed he was entitled to by reason of the fraud and deceit practiced on him by the defendant's false representations, causing him to execute a written contract and his notes for $15,000, in the purchase of a half interest in a lumber company in Muskogee county, Okla., with the lumber plant at Heavener, Okla.

Plaintiff claimed that in September, 1920, the defendant misrepresented to him that he was the owner of the Potter Lumber & Supply Company, and that he had assets in the sum of $30,000, consisting of an indebtedness due him from the Brown Manufacturing Company, in the sum of $13,600, and a timber lease from Charles F. J. and O. C. Buschow worth $3,500, and a lumber plant in LeFlore county, consisting of buildings, improvements, and machinery, saw mills, planer, office building, five cottages, one barn, a planing mill, shed and approaches, and all necessary equipment for a saw mill, located in the timber about 7 miles from Heavener, and an office at Heavener, and books and furniture located in a room in 401 Barnes Building, Muskogee, and "other personal property" worth $2,670.50; and he represented that all of this property was worth $30,000, and proposed to the plaintiff that they would organize a company that would be known as the Louisiana Lumber Company; and the plaintiff to pay $15,000 for a half interest in the capital stock and the defendant was to have the other $15,000 of said stock, and that said company was organized and plaintiff entered into a written contract with the defendant in which these terms were agreed upon, and the plaintiff executed his notes, relying upon the representations as to the value of the property above stated, and that the defendant knowingly misrepresented the value of the indebtedness in the sum of $13,600 from the Brown Manufacturing Company, when he knew it was not worth that much, and as a matter of fact was only worth $7,583.51, and that the timber lease that the defendant represented to be worth $3,500 was worth nothing, and the "other personal property", the items of which were not given, which the defendant stated was $2,670.50, was fictitious and represented no property and no value, and that he was thus induced to invest $15,000 in the company, relying upon the representations of the defendant, and to his damage in the sum of $5,693.24. The defendant demurred to the plaintiff's second amended petition on the ground that it did not state facts sufficient to constitute a cause of action in favor of plaintiff and against the defendant, which being overruled by the court, the defendant filed his answer consisting, first, of a general denial, and, second, that the contract that plaintiff and defendant entered into was for the benefit of the Potter Lumber & Supply Company, and that plaintiff bought his interest

in the Louisiana Lumber Company, a corporation, in a separate and distinct transaction from the one in which the contract mentioned by plaintiff was entered into, and even if the plaintiff was defrauded it was not in connection with his transaction in buying stock in the Louisiana Lumber Company, but he denies the allegations of false representations and fraud.    Defendant pleads further that in making the written contract with the plaintiff that he was acting as agent for the Potter Lumber & Supply Company, a corporation, and that that contract was between the plaintiff and the Potter Lumber & Supply Company, so far as the transfer of the property upon account of which plaintiff complains of being swindled is concerned.   Defendant states, further, that the plaintiff expressed himself as being dissatisfied with the contract and transaction and to satisfy him, as the agent for the said Lumber & Supply Company, he returned to the defendant one of his notes for $2,500, which had been given for the purchase price of said property, and which was a part of the $15,000, and the plaintiff accepted the return of this note in full satisfaction of all claims upon account of which he is now prosecuting his action.   Defendant further pleads that the plaintiff was a banker, a lumber man, and a shrewd business man, and that he had ample opportunity to examine all the property and details entering into the transaction before he invested and entered into the written contract with the defendant, and if the property was not worth as much after the plaintiff's investment, it was because of the general depression that prevailed in the lumber business and every other sort of busines throughout the country.   The plaintiff filed a reply which consisted of a general denial. The issues were tried to a jury December 7, 1921, and resulted in a verdict and judgment in favor of the plaintiff in the sum of $1,000, and the defendant has appealed and states 10 assignments of error.

1.  The principal errors complained of by the defendant relate to the sufficiency of the evidence and the instructions of the court.    The plaintiff's testimony is the principal evidence showing the issues in the case, the greater part of which is as follows:

"A.  Mr. Potter proposed that I enter into a business with him and that we organize a company, lumber company for $30,000, that he take half the stock and I take half and he would turn over the assets he had at Heavener, Okla., to me and I should pay $15,000 for half of this stock.   Q. Did he

state of what the assets consisted at that time? A. He did. Q.  Of what did he state? A. He said the land, buildings, machinery he owned and—.   Q. At Heavener? A. At Heavener, valued at $10,000.  Q. $10,000? A. Yes, and that he had assigned contract he had for timber known as the Buschow Contract for $3,500 and that office furniture at Muskogee and some little furniture he had in the office at Heavener valued at $262.50 and other properties $2,367.50 and a prior account that was due from the Brown Manufacturing Company, $13,600; these separate items together totalled $30,000 and he would turn it in for $30,000.   Q. Had you information the Buschow contract was what it was said?  A.  The Buschow contract was a contract he had with Buschow for something like 6,000,000 feet of standing timber, he had a contract for $3.50 a thousand and to pay for it as you cut it and that he had paid on that contract, advance payment of $3,500 and this was the value he placed on the contract.   Q. You may state whether or not at that time you could take all the timber? A. Said he had a contract for this timber at $63.50 a thousand after you cut it.   Q. You see the contract at that time? A. I did not.   Q. Had you any information with reference to the contract other than the information received by you from the statements of Mr. Potter? A. I had not.   Q. At the time had you seen the Brown contract? A. I had not.  Q. Had you seen anything with reference to the Brown account other than what you learned from Mr. Potter? A. Mr. Potter's word only. Q. Did you explain it to Mr. Potter? A. I certainly did. Q. Did you know at that time of what the other property consisted? A. I did not. Q. Did you have any information with reference to other personal property other than what Potter gave out?   A.  None, whatever. Q. You after that see Mr. Potter?   A. I did.   Q. Where? A. Mr. Potter had me meet him in Miami a few days after that.  Q. For what purpose? A. Fixing up the business, looking to the organization of the Louisiana Lumber Company. Q. Did you go to Miami? A. I did.   Q. From the time he made these statements going from Muskogee to Miami had you been to Heavener or made any other investigation of the contract other than the statements made by Mr. Potter?   A. None.  Q. State what you did when you got to Miami, first you met Mr. Potter there? A. I did, Mr. Potter and his attorney were already drawing up the papers in other words a contract, between he and I as to this deal he had mentioned and wrote the papers for the organization of the Louisiana Lumber Company and some of the papers were handed to me and asked if they were all right or suited me, something to that effect.  Q. What was the name of the contract you speak of? A. When I had a contract handed to me, it was Potter Supply Company.  Q  Talk to Potter about that? A. Potter said he owned it, the Potter Supply

Company was all the same thing. Q. Was the company organized? A. It was. Q. What was the name of it? A. Louisiana Lumber Company. Q. At that time what percentage of the stock did you take? A. Half. Q. What was he to take? A. Half, fifty per cent each. Q. Were a set of books opened at that time? A. They was. Q. Assets of the company listed? A. They were. Q. By whom were the books opened? A. Mr. Potter. Q. Who listed the assets of the company and capital stock of the company? A. Mr. Potter. Q. Examine the book I hand you and at the top of the page states that is for—A. This is a journal of the Louisana Lumber Company showing the assets listed and books opened. Q. In whose handwriting is that? A. Mr. Potter's. Q. You seen Mr. Potter write that? A. I did. Q. Up to that time Mr. Bond had you anything to do with the assets of the company? A. I had not. Q. From whom had you received any information with reference to the assets? A. No one. Q. Other that * * * A. Mr. Potter. Q. After the organization of the company did you investigate the assets of the company? A. I did. Q. Did the company receive from the Brown Manufacturing Company its account of $13,600? A. I did not. Q. What was the amount of that account? A. This account finally determined by a board of arbitrators and the account finally determined to be around $8,000. Q. You and Mr. Potter talk about the account and adjust the amount of the account? A. We did. Q. What was the amount of the account? A. $5,140, less than the amount he listed there as assets. Q. I notice merchandise, $2,837.50, state whether or not there was merchandise turned over to the company in that sum? A. Never was. Q. Receive any merchandise? A. Did not. Q. Have any conversation about that merchandise? A. I did. Q. State to the court and jury what was said? A. At the time he said it on the books, I asked him what it represented. I asked Mr. Potter what it consisted of and he said didn't consist of anything that it would workout in the books, that's the reason he put it in the merchandise account. Q. You say anything further to him? A. Frequently after that I asked him to put in the merchandise or value in cash. Q. Did he do it? A. No, sir. Q. * * * Did you receive any other personal property other than the office furniture? A. I did not. Q. Was there other personal property of the value of $2,637.50 or of any other value turned in? A. There was not. Q. Did you talk to Mr. Potter about it? A. I did. Q. What did he say? A. He refused to put it in. Q. Make any demand on him? A. Frequently. Q. Did he ever put it in? A. He did not. Q. Now listed as one of the assets on the books of the company I notice an item of $2,637.50, state to the court and jury whether or not that amount of merchandise was turned over to the Louisana Lumber Company, by Mr. Potter? A. It was

not. Q. Or by the Potter Supply Company? A. It was not. Q. Did you have any conversation with Mr. Potter with reference to that item? A. I did. Q. What did he say near as you can? A. I asked him to put this amount into the company or to pay it in cash. By The Court: Prior to that some other part of the conversation you asked him some other question about what it consisted? A. I asked him of what it consisted and he said not anything, it would work out in the books, that's the reason he put it in merchandise account."

It appears there were three items of value entering into the $30,000 worth of stock of the corporation, the Buschow timber contract valued at $3,500, the Brown Manufacturing Company's account, valued at $13,600, and, "the other properties" valued at $2,367.50, and which plaintiff claims the defendant misrepresented to him, and these three items are the items involved in the controversy.

The defendant complains of the following instruction relating to the timber contract:

"You are instructed that although you may believe that the defendant, Potter, represented that the contract which had been introduced in evidence between Charles F. J. and O. C. Buschow and Mineral Belt Lumber Coompany was of the actual market value of $3,500, the plaintiff can recover nothing on this account."

This instruction is evidently based on the evidence which fails to show any damages suffered by reason of the contract. There are two good reasons why the defendant cannot be heard to complain of this instruction, one is because the instruction is in his favor, and the other is because he failed to except as the law requires. The record shows that plaintiff announced an exception but the defendant was silent.

The defendant further contends that the court erred in its instruction as to the indebtedness from the Brown Lumber Company. This instruction was as follows:

"You are further instructed that it appears from the undisputed evidence in this case that the difference in the amount of the indebtedness from the Brown Lumber Company to the Potter Lumber & Supply Company, and the damages which plaintiff has sustained by reason thereof has been agreed upon and adjudged between the parties with the exception of the sum of $70 which amount is now due and owing to the plaintiff and for which plaintiff is entitled to a verdict."

This instruction was based upon the undisputed facts of a settlement between the parties as to those items. It was in accord

with the defendant's testimony and in his favor and we cannot see where he was injured by it but rather benefited. The exception to this paragraph of the instruction states, just after the language used, defendant excepts." This is not sufficient to bring the instruction complained of before the court for review. Bartlesville Interurban Ry. Co. v. Quaid, 51 Okla. 166, 151 Pac. 892.

The third item involved in the controversy is the item of "other personal property," of the value of $2,637.50. Defendant contends that the testimony was not sufficient to make out a case of fraud and damages for any of the items complained of by the plaintiff in his petition, and from the fact the court by the instructions above discussed left all out but this last item, we have examined the whole record, and we think the testimony was amply sufficient to go to the jury as to whether or not the defendant practiced fraud on the plaintiff in representing that there was "other personal property," worth $2,637.50, turned into the assets of the $30,000 corporation and the instruction of the court on this issue was substantially correct, and the verdict of the jury is supported by the evidence. We think the demurrer to the evidence was properly overruled.

The defendant further contends that the court erred in permitting the plaintiff to introduce testimony as to the reputation of the defendant for truth and veracity. This contention is based on the fact that the defendant could not be impeached for truth and veracity except in the neighborhood of his permanent residence or domicile, and inasmuch as the defendant did not have his family residence or domicile in the neighborhood of Heavener, he could not be impeached by testimony as to his reputation in that neighborhood, citing 72 R. C. L. 28-217, and Richards v. State, 12 Okla. Cr. 224, 154 Pac. 72.

The rule as stated in these authorities is not in conflict with the general rule as laid down by Wigmore in section 930, which states that the testimony and inquiry is as to the place "where he moves and exhibits his conduct."

This rule is broad enough to include temporary as well as permanent residence. An examination of the record discloses that the defendant failed to make proper objection to this testimony to save his point for review. It is not enough to object and to except, but the ground must be stated. McNally v. Harley, 68 Okla. 115, 172 Pac. 46;

Bishop-Babcock-Baker Company v. Estes Drug Company, 63 Okla. 117, 163 Pac. 276; Fender, Administrator, et al. v. Segro, 41 Okla. 318, 137 Pac. 103; Bower-Venus Grain Company v. Smith, 84 Okla. 105, 204 Pac. 265.

We think the record shows the defendant had a fair trial and the same is sufficient to sustain the judgment, and the petition in error is not well taken, and we recommend that the judgment be affirmed.

By the Court: It is so ordered.