HUBERT *v.* JOSLIN.

1. APPEAL AND ERROR—FRAUD—FINDINGS OF FACT BY COURT.

On defendants' appeal from decree in suit to obtain credit on land contract and money decree for fraud practiced upon plaintiffs in exchange of their property located in another State as part payment for farm located in this State, Supreme Court is not disposed to criticize findings made by trial judge who saw the witnesses and could judge the truthfulness of their statements on disputed questions of fact as to whether or not fraud was practiced by defendants, as to whether either of three men through whom exchange was effected were agents of defendants and whether property exchanged by plaintiffs was of any value.

2. VENDOR AND PURCHASER—FRAUD—VIEW OF FARM—SUBSEQUENT STATEMENTS AS TO VALUE, CHARACTER OF SOIL, PRODUCTIVITY.

Defrauded person who saw farm in winter while soil was frozen, before purchasing it on land contract, is not thereby precluded from relief from subsequent fraudulent statements of defendants as to its value, character of soil and productivity.

3. FRAUD—SELF-RELIANCE CLAUSE.

Self-reliance clause in contract, signed by plaintiffs subsequent to completion of deal whereby plaintiffs' out-of-State property was used in partial payment for a farm, is ineffective against claim of fraud.

4. PRINCIPAL AND AGENT—AGENT'S FRAUD.

Principal who obtains money or property as result of his agent's activities in a transaction is chargeable with the agent's fraud to the same extent as if fraud were committed by principal.

5. FRAUD—MEASURE OF DAMAGES.

Measure of damages in suit for fraud in obligating plaintiffs on a land contract is difference between the property as it actually was and the value of it if it had been as represented.

6. VENDOR AND PURCHASER—LAND CONTRACTS—FRAUD—DECREES—
EQUITY.

> In suit to obtain credit on land contract and money decree from
> defendant vendors, where difference in value between what
> plaintiffs received and what it was represented to them farm
> was worth was $2,600, order that amount of $2,100 remaining
> unpaid on contract be considered satisfied and money decree
> for plaintiff in amount of $148.54, representing balance due
> plaintiffs after deduction of $351.46 excess of incumbrances
> on property they traded toward farm over amount defendants·
> had understood was owing *held*, to have effected an equitable
> result.

7. WITNESSES—EVIDENCE—OPPOSITE    PARTY—IMPEACHMENT—STAT-
UTES.

> Under statute, agent of opposite party may be called and cross-
> examined and party calling such agent has right to impeach
> him (3 Comp. Laws 1929, § 14220).

8. EQUITY—LACHES.

> Laches is in some cases a bar to equitable relief.

9. VENDOR AND PURCHASER—LACHES—EVIDENCE.

> Plaintiffs who sought credit on land contract and money decree
> for fraud by suit in which bill was filed some three years after
> execution of the contract and after defendants had prosecuted
> an expensive lawsuit which resulted in having a $2,000 mort-
> gage against plaintiffs' farm cancelled *held*, not guilty of
> laches under the circumstances where defendants were respon-
> sible for plaintiffs' inability to hire lawyers because of lack of
> funds.

10. SAME—FRAUD—RATIFICATION—EVIDENCE.

> Personal note given by purchaser of farm in payment on land
> contract, some months after taking possession of the farm
> *held*, not a ratification of the fraud involved in the transac-
> tion where it is shown plaintiffs were inexperienced in business,
> had no money to bring a lawsuit, needed a place to stay and
> had had no opportunity to put in a crop themselves to see what
> farm would raise, and it is not shown maker knew purport or
> effect of note at time it was given, has not paid it nor made
> other payments on land contract.

11. WITNESSES—CREDIBILITY—RESIDENTS OF COMMUNITY IN WHICH
DEFENDANTS' AGENT DID BUSINESS.

> In purchasers' suit in equity to obtain relief because of fraud
> involved in purchase of farm, evidence *held*, to show one of

defendants' agents was familiar with the property in question, was frequently at his own adjoining farm and had many business dealings in the community, some 15 miles away from his home, hence testimony as to his credibility by persons residing in vicinity of farm was admissible.

12. SAME—CHARACTER—EVIDENCE.
   Proof of general reputation for truth and veracity of witnesses is not confined to the community where they are actually domiciled to the exclusion of the locality in which they continuously do business.

13. VENDOR AND PURCHASER—FORFEITURE OF LAND CONTRACT—EQUITY—JURISDICTION—FRAUD.
   Generally courts of equity have concurrent jurisdiction with courts of law to grant relief from fraud and plaintiffs, seeking credit on land contract made incident to purchase of farm and money decree for balance of damages for fraud practiced upon them were properly within jurisdiction of equity where they also sought to stay proceedings to forfeit land contract.

Appeal from Muskegon; Sanford (Joseph F.), J. Submitted April 15, 1938. (Docket No. 22, Calendar No. 39,813.) Decided June 30, 1938. Rehearing denied October 3, 1938.

Bill by Peter Hubert and wife against Crill Joslin and wife to obtain the amount of damages suffered by plaintiffs because of fraud of defendants, for an injunction and other relief. Cross-bill by defendants against plaintiffs for damages occasioned by plaintiffs' fraud and for foreclosure of land contract. Decree for plaintiffs. Defendants appeal. Affirmed.

*Alexis J. Rogoski* and *Noel P. Fox,* for plaintiffs.

*Leland W. Grotewohl* and *Christian A. Broek,* for defendants.

POTTER, J.   May 12, 1932, plaintiffs traded their Chicago property to defendants for a farm with cer-

tain personal property thereon located in Ravenna township, Muskegon county. Plaintiffs agreed `to pay $2,100 to defendants to boot. This agreement was evidenced by a land contract wherein plaintiffs became purchasers of the Ravenna property. Plaintiff Peter Hubert and defendant Crill Joslin later signed a further agreement in relation to broker's fees and other things, which contract contained a so-called "self reliance clause."

Prior to the execution of the instruments effecting the trade of properties, plaintiffs were interviewed by one Louis Simon, brother of Joseph Simon, and one Cashin, relative to the purchase of the Ravenna farm, at Chicago. Plaintiffs claim these parties made false representations to them as to the value, nature, and productivity of the soil. Plaintiff Peter Hubert visited the farm before purchasing it and was met at Muskegon Heights by Joslin and Joseph Simon who accompanied him to the farm. Cashin accompanied him on this visit. Plaintiff Peter Hubert was undecided as to the trade and upon his return to Chicago complained to Louis Simon and Cashin that the land was sandy but was assured by Louis Simon that the land was clay soil with only a slight top surface sandy. Plaintiff Peter Hubert claims prior to making the deal he was told by Louis Simon the farm was worth $7,000 including the personal property thereon, and was capable of growing substantial crops, and any doubt he entertained after visiting the farm in relation to the nature of the soil and its productivity was dispelled by the representations made by Joseph Simon when he visited the farm and by Louis Simon on his return to Chicago. The trade was made a few months after plaintiff's visit to Ravenna after he had been approached numerous times by Louis Simon to consummate the deal. Plaintiffs moved on the farm in July, 1932.

They claim the personal property was not the same either in quantity or quality as when plaintiff Peter Hubert visited the place, that crops were not planted as had been represented, and that all but eight acres was sandy soil instead of clay, and the land was not capable of growing crops as represented to them.

Defendants later offered to rescind the trade but plaintiffs claim the Chicago property had been neglected in the meantime.

Plaintiff Peter Hubert gave his personal note for $100 to defendant Joslin in January, 1933, payable one year thereafter. This was by way of payment on the farm.

In February, 1935, defendants commenced forfeiture proceedings which were stayed by this suit.

Plaintiffs allege fraud and misrepresentation on the part of defendants and the Simon brothers and a conspiracy on their part to defraud them and pray that they receive a credit on the land contract in an amount equal to the difference between the value of the farm and personal property thereon as represented and the actual value thereof, and that they obtain a deed to the farm and recover any amount found to be due them in addition.

Defendants deny all allegations of fraud, that the Simon brothers were their authorized agents, and pray for affirmative relief based upon alleged false and fraudulent representations made by plaintiffs in relation to the value of, and income from, the Chicago property and the amount of a mortgage thereon assumed by defendants and for a foreclosure of the land contract.

After hearing the testimony and considering the depositions introduced, the trial court was satisfied plaintiffs had established by a preponderance of the proof each and every essential element of fraud and misrepresentation necessary to entitle them to re-

lief; that defendants had failed to prove fraud and misrepresentation on the part of plaintiffs or either of them. The trial court was satisfied that both the Simon brothers were acting as agents of defendants and in conjunction with them in effecting a trade of the properties and that they made false and fraudulent representations as to the value of the farm land, the crops planted thereon, and the nature and productivity of the soil; that such false and fraudulent statements were made with knowledge on their part of their falsity because both of them were well acquainted with the farm and it was their intention to induce the plaintiff Peter Hubert to rely upon the same; that he did rely thereon and suffered damages by reason thereof. The trial court also said he was satisfied the Simon brothers had an interest in selling the farm which does not appear outwardly in the case. He found that Leo Langlois, to whom a commission was to be paid, was not guilty of fraud or deceit.

Plaintiff Peter Hubert has difficulty in understanding and speaking the English language. He lived in Chicago, was unacquainted with farm land in Michigan, and learned little or nothing concerning the farm in question during his visit in March, 1932. Though he saw the land, positive misrepresentations were made to him by Joseph Simon at Muskegon and by Louis Simon in Chicago after his return. The trial court was satisfied plaintiff told the truth; that he believed and relied on the representations as to the character of the land, the same being frozen at the time he examined it; that the farm was fraudulently represented to be of the value of $7,000 and productive, whereas, in truth the farm and personal property thereon was worth in fact $4,400; that there was a balance of $576 owing on plaintiffs' mortgage at the time of the deal instead of $400, and the total

incumbrance against the Chicago property, including principal, interest, taxes and insurance, amounted to $751.46. The trial court was satisfied plaintiffs were not guilty of fraud and deceit in relation to the incumbrance upon the Chicago property though defendants may have been misled by reason of plaintiffs' difficulty in explaining the situation. The trial court said:

"Plaintiff was no match for either of the Simon brothers, let alone both, when it came to making the trade of properties and I am satisfied that he was bewildered and defrauded in the transaction."

Plaintiffs were not compelled to rescind. They were defrauded in the amount of $2,600; and defendants are entitled to a credit of $351.46 as against this amount, representing the difference between the amount of the incumbrance as it actually was and as it was understood by plaintiffs. The trial court found that $2,100 of $2,248.54 out of which plaintiffs were defrauded would be applied in payment of the balance owing on the contract, completely paying and satisfying the same; and that defendants should convey the Ravenna property to plaintiffs within 10 days after the signing of a decree, and, in default thereof, the filing of a certified copy of the decree in the office of the register of deeds of Muskegon county would operate as a conveyance thereof to plaintiffs; that plaintiffs were to have decree for the balance of $148.54, and costs, not including the costs incurred as the result of the taking of further proof. Decree in conformity with this finding was entered and defendants appeal, assigning 13 reasons or grounds for appeal.

The first four of these reasons relate to disputed questions of fact, whether there was fraud practiced by defendants; whether either Cashin, Joseph Simon

or Louis Simon were agents in making the exchange; whether the property exchanged by plaintiffs was of any value. The trial court passed upon these disputed questions of fact. He had an opportunity to see the witnesses and judge the truthfulness of their statements and we are not disposed to criticize his findings upon these questions. *Halicki* v. *Halicki*, 244 Mich. 341; *Huber* v. *Shay*, 278 Mich. 414.

Though plaintiff Peter Hubert went to Ravenna and saw the land in question, it cannot be claimed that in doing so he precluded himself from relief from the subsequent fraudulent statements of defendants. *Pinch* v. *Hotaling*, 142 Mich. 521; *Yanelli* v. *Littlejohn*, 172 Mich. 91; *Gugel* v. *Neitzel*, 248 Mich. 312. Nor was he precluded from complaining of fraud by reason of having signed the contract for the exchange of property which contained a so-called "self reliance clause" subsequent to the completion of the deal. There is ordinarily no reason to insert such a clause in a contract unless the party who insists upon it is prompted to do so by a consciousness he has successfully perpetrated a fraud upon the opposite party. Such a clause is ineffective as a defense against fraud. *Peck* v. *Jenison*, 99 Mich. 326; *J. B. Millet Co.* v. *Andrews*, 175 Mich. 350; *J. B. Colt Co.* v. *Reade*, 221 Mich. 92; *Plate* v. *Detroit Fidelity & Surety Co.*, 229 Mich. 482; *Fignar* v. *Schreiber*, 255 Mich. 661; *Gloeser* v. *Moore*, 284 Mich. 106.

It is settled in this State that where money or property is obtained and agents are active in the transaction, the principals are chargeable with the agent's fraud to the same extent as if they had committed the fraud themselves. *Busch* v. *Wilcox*, 82 Mich. 336 (21 Am. St. Rep. 563); *Bertha* v. *Regal Motor Car Co.*, 180 Mich. 51 (8 N. C. C. A. 460); *Moynes* v. *Applebaum*, 218 Mich. 198; *Zadel* v. *Simon*, 221 Mich. 180; *Chaffee* v. *Raymond*, 241 Mich.

392; *Upell* v. *Bergman,* 246 Mich. 82; *Lane* v. *Wood,* 259 Mich. 266; *Gower* v. *Wieser,* 269 Mich. 6; *Gloeser* v. *Moore, supra.* The testimony shows persistent efforts upon the part of the Simons to induce plaintiffs to become the owners of the Ravenna property. Louis Simon, when he first talked with Peter Hubert in Chicago, stated that a widow, with a 12-year old boy, who wished to run a store in Chicago, was the owner of the Ravenna property and it was not until Hubert came to Muskegon Heights that he heard about the Joslin defendants who actually owned the property. The Simons were too active in endeavoring to consummate the transaction not to cause the trial court to have misgivings as to their altruistic interest in behalf of the Joslins, but opinion did not rest upon the undisclosed interest, if any, of the Simons.

At the time of the trade there was a $2,000 mortgage against the land. The actual value of the land was neither increased nor diminished because of the mortgage. The contract was that, in addition to the trade of properties, $2,100 was to be paid by plaintiffs. The contract stated:

"It is understood there is a mortgage on said premises due the Federal Land Bank of St. Paul, Minn., and it is further agreed that second party may make the payments due on said mortgage direct to said Federal Land Bank and for all such payments he shall be credited with same on this contract."

Plaintiffs were to obtain a $7,000 value for their property in Chicago and $2,100. Actually, they received $4,400 in value. When the mortgage was cancelled by the application of $2,000 insurance money to the obligation secured by the mortgage after plaintiffs' deal with defendants was consummated, plaintiffs filed their bill and, among other things, asked that defendants be enjoined from declaring the land

contract forfeited which they were attempting by suit at law to do. The measure of damages is the difference between the actual value of the property as it was and the value of the property if it had been as it was represented to be. *Moynes* v. *Applebaum, supra.* This difference was found by the court to be $148.54, taking into consideration defendants' credit of $351.46, more than the amount of $2,100 which plaintiffs were to pay in order to obtain the fruits of their $7,000 bargain if they had elected to pay on the mortgage obligation which is now paid. Having suffered in excess of the amount which they were to pay, plaintiffs should obtain the equivalent to what they expected to get, and this was substantially accomplished by the decree of the trial court. *Bankers Trust Co.* v. *Weber,* 244 Mich. 697.

Joseph Simon was called by plaintiffs under the statute providing for the cross-examination of the agent of the opposite party. 3 Comp. Laws 1929, § 14220 (Stat. Ann. § 27.915). There is sufficient testimony to establish an agency between Joseph Simon and defendants. Plaintiffs had the right to impeach him as they did. *O'Dell* v. *Day,* 214 Mich. 566; *Fleegar* v. *Consumers Power Co.,* 262 Mich. 537; 1 Searl, Michigan Pleading & Practice, § 260.

It is contended plaintiffs waited three years and until after defendants had prosecuted an expensive lawsuit which resulted in having a $2,000 mortgage on the farm cancelled and thus precluded themselves from complaining against defendants' fraud. Laches is in some cases a bar to equitable relief. But plaintiffs claim they did not institute proceedings before because they had no money to hire a lawyer and could do nothing. They ought not to be penalized; and defendants ought not to be permitted to profit by the circumstances in which plaintiffs found themselves

because of the alleged trade, a condition for which defendants were responsible.

Assuming, without deciding, that the note signed by Hubert January 22, 1933, is properly before the court, it cannot be said it amounted to a ratification of the fraud involved in the transaction. Plaintiffs were not experienced in business, they had no money to bring the lawsuit, they needed a place to stay, they had no opportunity to put in a crop themselves upon the land in question and see what the result of their efforts at cultivation would do. They were being importuned to trade back but at the same time were being told the buildings on the Chicago property were in a bad state of repair and that the mortgage thereon was due and unpaid. Plaintiff Theresa Hubert did not sign the note although she was a party to the land contract. It is not shown plaintiff Peter Hubert knew the purport or effect of the note at the time it was given, and he has not paid it, nor has he made payments on the land contract.

Joseph Simon left the Ravenna neighborhood about 10 years ago. He has since lived in Muskegon Heights, about 15 miles away. He has for several years owned property in Ravenna township and at the time of the trial owned a farm adjoining that of plaintiffs. He was a frequent visitor in that township and familiar with the property in question. *Zadel* v. *Simon, supra.* He was frequently at his farm, had many business dealings in the community, and the trial court permitted persons living outside of Muskegon Heights, residents of Ravenna, to testify as to his credibility. This was not error. *People* v. *Lyons,* 51 Mich. 215; *People* v. *Mix,* 149 Mich. 260 (12 Ann. Cas. 393); *Craven* v. *State,* 22 Ala. App. 39 (111 South. 767); *Ulrich* v. *Railroad Co.,* 281 Mo. 697 (220 S. W. 682); *Baer & Co.* v. *Mobile Cooperage & Box Manfg. Co.,* 159 Ala. 491 (49 South.

92); *Banker* v. *Ford,* 152 Ill. App. 12; *Brotherhood of Railroad Trainmen* v. *Vickers,* 121 Va. 311 (93 S. E. 577); *Potter* v. *Bond,* 98 Okla. 135 (224 Pac. 537). Under modern conditions, many people continuously transact business in a city although they may live outside. There is no rule of law that confines the proof of their general reputation for truth and veracity to the community where they are actually domiciled to the exclusion of the locality in which they continuously do business. The trial court was not in error in admitting this testimony.

It is a general rule that courts of equity have concurrent jurisdiction with courts of law to grant relief from fraud. *Culver* v. *Avery,* 161 Mich. 322; *Edwards* v. *Michigan Tontine Investment Co.,* 132 Mich. 1; *Louis J. Selznick Enterprises* v. *Harry I. Garson Productions,* 202 Mich. 111; *Holbrook* v. *Blick,* 256 Mich. 396. Plaintiffs seek to retain the farm property they acquired and recover damages in equity rather than suing at law. An examination of the authorities satisfies us they have a right under the circumstances of this case to do so. *Carroll* v. *Rice,* Walk. Ch. (Mich.) 373; *Smith* v. *Werkheiser,* 152 Mich. 177 (15 L. R. A. [N. S.] 1092, 125 Am. St. Rep. 406); *John Schweyer & Co.* v. *Mellon,* 196 Mich. 590; *Vanek* v. *Soumar,* 218 Mich. 282; *Bankers Trust Co.* v. *Weber, supra.*

We think the suit was properly brought, that plaintiffs had an option to sue at law or to file a bill in equity. The trial court saw the witnesses, heard their testimony, and we think arrived at a correct conclusion. We find no reversible error.

Decree of the trial court is affirmed, with costs of both courts.

WIEST, C. J., and BUTZEL, BUSHNELL, SHARPE, CHANDLER, NORTH, and McALLISTER, JJ., concurred.